## JOANNA COTTON MILLS CO. v. NATIONAL LABOR RELATIONS BOARD.

### No. 5890.

United States Court of Appeals
Fourth Circuit.

Argued July 1, 1949.

Decided Aug. 10, 1949.

A. C. Todd and Howard L. Burns, Greenwood, S. C. (Grier, McDonald, Todd & Burns, Greenwood, S. C., on the brief), for petitioner.

Bernard Dunau, Attorney, National Labor Relations Board, Washington, D. C. (David P. Findling, Associate General Counsel, A. Norman Somers, Assistant General Counsel, Washington, D. C., and Michael J. Bernstein, Attorney, National Labor Relations Board, on the brief), for respondent.

Before PARKER, Chief Judge, SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

This is a petition to review and set aside an order of the National Labor Relations

Board requiring the Joanna Cotton Mills Company to reinstate a discharged employee, Jones M. Blakely, to his former position, with back pay, and to post notices to the effect that it will not interfere with its employees in the exercise of their right to engage in concerted activities. The Board in its answer asks enforcement of the order.

The case originated on a charge filed with the Board by an A. F. of L. Union in 1947 alleging that the company had engaged in various antiunion activities and had discharged Blakely because of his membership in and activities on behalf of the union. An amended charge was filed on February 13, 1948, adding to the original charge an allegation that the company had discharged Blakely because he had engaged with other employees "in concerted activities for the purpose of collective bargaining and for other mutual aid and protection"; but a copy of this amended charge was not mailed to the company until February 26, 1948, more than six months after the Labor Management Relations Act of 1947, 61 Stat. 146, 29 U.S.C.A. § 160, had become effective. The Board found that the company had not been guilty of the antiunion activities alleged and had not discharged Blakely because of union membership or activities but had discharged him because of engaging in other concerted activities, which were held to be embraced within the amended charge. Two members of the Board, including the chairman, dissented from the holding on the amended charge. The company contends: (1) that the finding that Blakely was discharged for engaging in concerted activities is not sustained by substantial evidence, (2) that what is relied upon to support the charge does not fall within the meaning of concerted activities as those words are used in the statute; and (3) that the amended charge is barred by limitations because not served upon the company within six months after the passage of the Labor-Management Relations Act.

As the case comes to us, we need consider only the discharge of Blakely and the circumstance connected therewith. The facts are that, shortly prior to October 11,

1946, it came to the attention of Willingham, an overseer of the company, that Blakely had been operating a punch board or raffling device on the company's premises and had been loitering around a woman weaver as she was engaged in her duties. Willingham directed Lewis, a second hand exercising supervisory powers, to investigate these matters and warn Blakely with regard thereto. In pursuance of this order, Lewis spoke to Blakely about his conduct, and the latter became very angry, used harsh and insulting language and assumed an insubordinate attitude, saying that his talking with the woman was not Lewis' or "anybody else's damn business". A short while afterwards, he began circulating a petition asking that Lewis be discharged as an unsatisfactory second hand. The language used by Blakely was reported to Willingham and also the fact that he was circulating the petition asking for Lewis' discharge; and there is evidence that Willingham, thereupon, decided to discharge him for his misconduct. There is other evidence, however, to the effect that Willingham said that he would discharge him if he was responsible for the petition. After the petition was presented, Blakely was discharged, and later an officer of the company stated in a letter to the Board, answering the original charge, that he had not been discharged because of union membership and prounion activities, but because he had originated the petition and because of the destructive effect of such petitions upon disciplinary authority.

We think that this is substantial evidence to sustain the finding of the Board that Blakely was discharged because of his getting up and presenting the petition; but we agree with the position taken by Chairman Herzog and member Murdock in their dissenting opinion wherein they say: "His (Blakely's) conduct in initiating a petition demanding the removal of his foreman was not, under the circumstances of this case, the sort of activity which we believe Congress intended this Board to protect. It grew out of personal resentment at discipline imposed by that foreman because Blakely was neglecting his duties in order to conduct certain wholly personal

affairs. Although · Blakely succeeded· in inducing fellow employees to join in signing the petition, thereby converting a manifestation of one individual's pique into activity which was, in the verbally literal sense, 'concerted', the entire history of the transaction satisfies us that the Respondent was not intruding upon its employees' statutory rights by doing what it did." It may well have been that the initiating of the petition was the cause of the discharge · in that the company might have overlooked . the trouble between Blakely and Lewis, if Blakely had not followed it up by circulating the petition; but it is perfectly clear, when consideration is given to the entire record, that the getting up and circulating of the petition was a mere continuation and aggravation of the original defiant conduct of Blakely, for which he could properly be discharged, and was in no sense the engaging in a "concerted activity" of employees for mutual aid and protection within the meaning of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. So far as Blakely is concerned, it was a mere continuance of the row with Lewis.

Not all activities in which employees act together are "concerted activities" within the meaning of the statute, the exact language of which is, 29 U.S.C.A. § 157: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."

The words "concerted activities" are limited in meaning by the words with which they are associated (noscitur a sociis), which have relation to labor organization and collective bargaining, and by the purpose of such "concerted activities"; which is expressly limited by the immediately succeeding language to concerted activities "for the purpose of collective bargaining or other mutual aid or protection." As we said, in N. L. R. B. v. Draper Corporation, 4 Cir., 145 F.2d 199, 203, 156 A.L.R. 989, where we held that a "wild cat" strike was not a concerted activity

protected by the act: "The purpose of the act was not to guarantee to employees the right to do as they please but to guarantee to them the right of collective bargaining for the purpose of preserving industrial peace. The policy of the act is thus set forth, 29 U.S.C.A. § 151: 'The denial by employers of the right of employees to organize and the refusal by employers to accept the procedure of collective bargaining lead to strikes and other forms of industrial strife or unrest, which have the intent or the necessary effect of burdening or obstructing commerce. * * * It is hereby declared to be the policy of the United States to eliminate the causes of certain substantial obstructions to the free flow of commerce and to mitigate and eliminate these obstructions when they have occurred by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection.'"

We agree that the "concerted activities" protected by the act are not limited to cases where the employees are acting through unions or are otherwise formally organized. It is sufficient that they are acting together for mutual aid or protection. See N. L. R. B. v. Peter Cailler Kohler Swiss Chocolates Co., Inc., 2 Cir., 130 F.2d 503. Thus, an employee may not be discharged for concerted activities to get pay for overtime work, N. L. R. B. v. Schwartz, 5 Cir., 146 F.2d 773, 774; nor for concerted activities in protesting the employment of a cashier whose employment the employees think will affect their earnings, N. L. R. B. v. Phœnix Mutual Life Ins. Co., 7 Cir., 167 F.2d 983, nor for demonstrating in protest over the firing of a union president, Carter Carburetor Corp. v. N. L. R. B., 8 Cir., 140 F.2d 714. As said by Judge Duffy in N. L. R. B. v. Phoenix Mutual Life Ins. Co., supra [167 F.2d 988], "A proper construction is that the employees shall have the right to engage in concerted activities for their

mutual aid or protection even though no union activity be involved, or collective bargaining be contemplated." It is clear, however, that to be protected the purpose of the concerted activities must be the mutual aid or protection of the employees; and it is equally clear that the circulation and presentation of the petition here involved was for no such purpose, but was nothing more nor less than an effort on the part of Blakely to vent his spleen upon a supervisory employee whose rebuke in the performance of duty had angered him.

It is true as argued by the Board that, where there is a bona fide concerted activity for any of the purposes named in the statute, its protection will not be denied because of the motives of those engaging in the activity; but it is not the motive of the participants that we are concerned with here but the "purpose" of the activity. It is clear that that purpose had no relation to collective bargaining, hours or conditions of work or any sort of mutual aid or protection of employees, but was simply and solely an effort on the part of Blakely to get rid of or humiliate the supervisory employee with whom he was angry. The petition cannot be viewed apart from the circumstances which give rise to it; and, when so viewed, it is clearly not the sort of concerted activity which the statute protects.

The conduct of Blakely in adopting a defiant and insulting attitude towards Lewis and then circulating a petition for his discharge because Lewis had rebuked him was conduct calling for discharge if any order or discipline in the plant was to be maintained; and the employer should not be branded with the guilt of an unfair labor practice and required to reemploy, with back pay, this defiant and insulting employee merely because it has done what any other employer would reasonably have done under the circumstances. We must not forget that the National Labor Relations Act "does not interfere with the normal exercise of the right of the employer to select its employees or to discharge them"; that the employer "may not, under cover of that right, intimidate or coerce its employees with respect to their self-organi-

zation and representation, and, on the other hand, the Board is not entitled to make its authority a pretext for interference with the right of discharge when that right is exercised for other reasons than such intimidation and coercion." N. L. R. B. v. Jones & Laughlin Steel Corp. 301 U.S. 1, 45, 46, 57 S.Ct. 615, 628, 81 L.Ed. 893, 108 A.L.R. 1352; N. L. R. B. v. Fansteel Corp., 306 U.S. 240, 254, 59 S.Ct. 490, 83 L.Ed. 627, 123 A.L.R. 599.

We do not think that, when the whole record is considered, Blakely can reasonably be held to have been discharged for the purpose of intimidating or coercing employees with relation to rights guaranteed them under the act. The Trial Examiner attributed great weight to what he thought was the attitude of the company towards petitions from its employees, as manifested by the letter to which we have referred; but we must deal with that attitude as manifested in the case before us. The company's position would probably have been very different if a petition having a proper purpose had been presented to it. When the one presented had no such purpose, but was the mere carrying forward of the defiant attitude of a recalcitrant employee whose manifest object was to defy proper discipline, it was properly dealt with by the company in accordance with its true nature. The conduct of Blakely in getting up and circulating such a petition was a very different sort of thing from the action of employees in going out on strike because of the grievance of a fellow workman, the case supposed by Judge Learned Hand in N. L. R. B. v. Peter Cailler Kohler Swiss Chocolates, supra, upon which the majority of the Board relies.

In the light of the record, the fact that the signatures of a number of employees were obtained to the petition is without significance. The testimony of those who gave evidence with regard thereto not only does not sustain any proper purpose on the part of the petition, but negatives such purpose. Lewis was a comparatively new second hand and the evidence, taken in the light most unfavorable to the company, indicates no more than that he was not

754

popular with certain employees because of the way in which he exercised supervisory authority. There is no evidence of improper conduct on his part or of any facts upon which it could reasonably have been thought that his dismissal would have been of aid or protection to the employees in any proper sense. They evidently signed the petition, as one of them testified, because Blakely asked them to do so, without thought of mutual aid or protection, and with no purpose other than to help him get rid of an unpopular second hand who had angered him. Surely the act was never intended to protect this sort of unwarranted interference with management.

■ And we think, also, that the charge is barred by limitations. Section 10(b) of the Labor Management Relations Act, 29 U.S.C.A. § 160(b), specifically provides that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made". We agree that the six months, as applied to the charge here, runs from the date when the statute became effective. See The Fred R. Smartly, Jr., 4 Cir., 108 F.2d 603, 607. The trouble, however, is that no charge relating to discharge for engaging in concerted activities, as distinguished from union activities, was served upon the company until more than six months had elapsed after the act had become effective.

■ The answer of the Board is that the charge served more than six months after the effective date of the act was an amended charge and that the original charge was filed and served in time. The trouble with this is that the original charge was not one which could have been sustained by proof of discharge on account of Blakely's activities in connection with the petition. It was one relating solely to antiunion ac-

tivities and the discharge of Blakely on account of union membership and activities in behalf of the union, a charge of which the Board found that the company was not guilty. The amended charge, which was expressly filed as a substitute, alleged for the first time that the discharge was because Blakely had engaged in "concerted activities" other than in connection with his union membership, and thus brought into the case a new and entirely different charge of unfair labor practice from that contained in the original charge.

■ The Board argues that it was the discharge of Blakely that was charged as an unfair labor practice in both charges; but the mere discharge of an employee is not an unfair labor practice. To discharge him because of union membership or activity is, of course, an unfair labor practice; to discharge him because of originating and presenting a petition for the discharge of a foreman, if an unfair labor practice, is one of an entirely different character. The case seems clearly one for the application of the rule recently announced by the Supreme Court that "a claim which demands relief upon one asserted fact situation, and asks an investigation of the elements appropriate to the requested relief, cannot be amended to discard that basis and invoke action requiring examination of other matters not germane to the first claim." United States v. Andrews, 302 U.S. 517, 524, 58 S.Ct. 315, 82 L.Ed. 398; United States v. Garbutt Oil Co., 302 U.S. 528, 58 S.Ct. 320, 82 L.Ed. 405. Not until more than six months after the effective date of the Labor-Management Relations Act was any charge served upon the company upon which the finding of guilt made by the Board could have been based; and it was then too late for the charge to be made.

For the reasons stated, the order of the Board will be set aside.

Reversed.