**NATIONAL LABOR RELATIONS BOARD v. JAMESTOWN VENEER & PLYWOOD CORP.**

No. 126, Docket 22150.

United States Court of Appeals Second Circuit.

Argued Jan. 8, 1952.

Decided Feb. 6, 1952.

George J. Bott, Gen. Counsel, David P. Findling, Associate Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Harvey B. Diamond and John E. Jay, Attys., Washington, D. C., for petitioner.

Charles A. Drake, Utica, N. Y., for respondent, Ferris, Burgess, Hughes & Dorrance and R. G. Dunmore, Jr., Utica, N. Y., of counsel.

Before SWAN, Chief Judge and CHASE and FRANK, Circuit Judges.

SWAN, Chief Judge.

This is a petition by the National Labor Relations Board for enforcement of its order of February 8, 1951 which directs the respondent employer to cease and desist from certain unfair labor practices and to offer reinstatement with back pay to five employees. The respondent objects only to the affirmative part of the order. It contends that the record considered as a whole does not support the Board's finding that in violation of section 8(a)(1) and (3) of the Act, 29 U.S.C.A. § 158(a)(1) and (3), the respondent discriminatorily discharged employee Powers and discriminatorily refused to recall or reinstate employees Wilcox, Sheppard, Davis and Morgan.

The discharge of Powers: The trial examiner and the Board found that Powers, a fireman employed at the respondent's plant, was discharged on or about July 22, 1949 because of the employer's anti-union animus. Powers was a member of the recently organized union and his testimony that he had told superintendent Henry of his membership was credited in preference to Henry's denial of the conversation. Upon the hearing the respondent admitted the discharge and adduced evidence which, if credited, would require a finding that he was discharged for good cause. But the trial examiner did not credit the respondent's witnesses for reasons which he set forth in his Intermediate Report. Without repeating them in detail, it will suffice to note that the respondent's principal witness had taken inconsistent positions with respect to the termination of Powers' employment. In September 1949 he asserted in a letter that Powers had quit voluntarily on July 16th; in the respondent's original answer sworn to by him on June 29, 1950 he denied that Powers was discharged; in the amended answer sworn to a month later he admitted the discharge; and at the hearing he testified that on July 20, 1949 he had ordered Powers to be discharged for the reasons now relied upon as adequate cause. The trial examiner rejected the evidence that Isaacson directed Ellis to discharge Powers, that Ellis did discharge him, and that Powers quit his job voluntarily; he credited Powers' testimony that Henry told Powers on July 22 that he was included in the lay-off of employees necessitated by business reasons. In the light of findings of anti-union animus, which the respondent's brief does not challenge, the trial examiner concluded that Henry's asserted lay-off of Powers was a pretext and the real situation was that he was then and there discharged for discriminatory reasons. The issue turns essentially on the credibility of witnesses. We cannot say that the record as a whole does not support the finding.

Refusal to reinstate Wilcox, Morgan, Sheppard and Davis: These four employees were members of the night shift working at the plant on Friday, July 22, 1949. Due to slackness of business the employer laid off 16 employees on that date and eight more on July 27th. It is not disputed that the July lay-offs were dictated by economic reasons and were necessary. About 11 P. M. on July 22nd foreman Morrison announced the lay-off to the night

shift. This was two and a half hours before the end of the shift.[1] He urged the men to stay and finish the shift. All did so except the four employees above named. They "talked it over" and immediately walked out in protest against the short notice they had received. The work which they left unfinished was done by other employees the following afternoon. When the plant reopened in August they were not called back, and when they applied for reinstatement, by letters dated September 3, 1949, the respondent replied to each that it did not recognize him as an employee because he voluntarily terminated his employment; it directed him, if he desired employment, to apply for it in the customary manner. Beginning on September 11th it hired other employees in their place. The Board's order directs that they be offered reinstatement with back pay from September 11, 1949.

 Section 7 of the National Labor Relations Act, 29 U.S.C.A. § 157, guarantees to employees the right "to engage in concerted activities, for the purpose of collective bargaining or other mutual aid or protection." The trial examiner found that the four employees who quit their work on July 22nd before the end of the night shift engaged in concerted activities protected by the above quoted provision. With this conclusion we cannot agree. Their walkout was not to secure a withdrawal of the notice of lay-off. Foreman Morrison had no authority to withdraw it, and they neither asked him to withdraw it nor to call up anyone with authority to do so. The trial examiner recognizes that their concerted activity could not immediately secure them longer notices of lay-offs but suggests that it could be supported as a protest "as far as future notices might be concerned." We disagree. There was no labor dispute pending as to how long a lay-off notice should be. The four employees who quit were provoked at the shortness of the notice. Their leaving had nothing to do with "collective bargaining or other mutual aid or protec-

tion" either present or future so far as appears. Quitting the job without cause is ground for refusal to reinstate the quitters. National Labor Relations Board v. Scullin Steel Co., 8 Cir., 161 F.2d 143, 150-151. In National Labor Relations Board v. Massey Gin & Machine Works, 78 N. L. R. B. 189, enforcement denied 5 Cir., 173 F.2d 758, certiorari denied 338 U.S. 910, 70 S.Ct. 348, 94 L.Ed. 560, the Board held that a work stoppage in protest against the employer's unilateral change in working hours was protected activity but its order was denied enforcement by the Fifth Circuit. See also National Labor Relations Board v. Reynolds International Pen Co., 7 Cir., 162 F.2d 680, 684; Joanna Cotton Mills Co. v. National Labor Relations Board, 4 Cir., 176 F.2d 749, 752-753; International Union, United Auto Workers v. Wisconsin Employment Relations Board, 336 U.S. 245, 249, 69 S.Ct. 516, 93 L.Ed. 651. In our opinion the work stoppage by the four employees who left when notified of the lay-off was not "protected" activity, and so much of the order as directs their reinstatement should not be enforced. In other respects enforcement is granted.

[1]. The reason the notice was short was because Mr. Isaacson had delayed having it announced in the hope that after returning to Jamestown he could make arrangements which would avoid putting into effect the list of lay-offs previously prepared.