**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**PUERTO RICO RAYON MILLS, INC., Respondent.**

No. 5723.

United States Court of Appeals First Circuit.

Heard Feb. 15, 1961.

Decided Aug. 29, 1961.

Melvin J. Welles, Atty., N.L.R.B., Washington, D. C., with whom Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and William J. Avrutis, Atty., N.L.R.B., Washington, D. C., were on brief, for petitioner.

Herman A. Gray, New York City, with whom Paul H. Stawinski, San Juan, P. R., and Gray & Grossman, New York City, were on brief, for respondent.

Before MAGRUDER,* HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

This is a petition for enforcement of an order of the National Labor Relations Board entered April 26, 1957 pursuant to the Board's decision, 117 N.L.R.B. 1355. The Board found that the respondent, Puerto Rico Rayon Mills, Inc., (hereinafter called the Company), had violated Sections 8(a) (1) and (3) of the Labor Management Relations Act, 1947, 29 U. S.C.A. § 158(a) (1), (3) (1952). The Board ordered the Company to cease and desist from (1) discouraging membership in the United Packinghouse Workers of America, AFL-CIO and Local Union No. 195, de Vega Alta, UPWA, AFL-CIO, (hereinafter called the Union), or any other labor organization of its employees by discriminating in regard to hire and tenure of employment or any term of employment; (2) interfering with, restraining, or coercing its employees in the exercise of the rights guaranteed in Section 7 of the Act, 29 U.S.C.A. § 157. The Board also ordered the Company to take affirmative action which the Board found would effectuate the policies of the Act: (1) rescind its notice of October 28, 1953 prohibiting distribution by its employees of union literature; (2) offer employees listed in the appendix immediate and full reinstatement and make them whole for the loss of earnings suffered as a consequence of the discrimination against them; (3) post appropriate notices.

The Company objects to an enforcement decree only in regard to the reinstatement and back pay provisions.

A brief outline of the facts of the labor dispute as found by the Trial Examiner and adopted by the Board is as follows. After the Union filed a petition for representation of the Company's production and maintenance workers, the superintendent of the plant became aware of the presence of union organizing material in the plant. The Company's personnel manager posted a notice prohibiting the distribution of propaganda material on behalf of any group or organization during working hours or within the factory grounds. Sometime later a company foreman told a group of employees that if they did not stop the union activity the Company would have to either discharge them or close the plant.

On December 1, 1953 some of the loom fixers and loom fixer learners as well as other persons on the first shift wore union buttons at work. The loom fixers and a loom fixer learner, Edelmiro Rodriguez Sastre were called to the office.[1] They were told by the superintendent that they had been excluded from the unit and should remove their union buttons. Rodriguez Sastre and two loom fixers who either wore a union button or insisted on the right to wear such buttons refused to comply. The personnel manager then declared that these three individuals were discharged.

At the end of the first shift other persons wearing union buttons were called to the office and twelve were discharged

* Sitting by designation.

[1]. On November 6, 1953 before the hearing examiner on the representation petition the Union and the Company stipulated that loom fixers and loom fixer learners were excluded from the unit. The context of the hearing indicates these employees were excluded because they were considered supervisory personnel. Subsequently the Company sent a letter to all persons in excluded classifications stating that they were prohibited from participating in concerted activities in order to maintain the Company's neutrality. The Board's decision on the appropriate unit followed the parties' stipulations, and a belated attempt to reopen the question of loom fixer learners was rejected. On October 20, 1954, in another proceeding, the Board determined that loom fixer learners were not supervisory employees, but that the loom fixers were supervisors under the terms of the Act. In the instant proceeding the Board determined that loom fixer learners were employees within the terms of the Act.

when they did not remove their union buttons. Later that day some of the employees met and agreed to picket the plant requesting the reinstatement of the dischargees. The employees struck the plant, began picketing and carrying signs requesting the reinstatement of the dischargees.

The strike was conducted in a peaceful manner until December 28 and 29, 1953. On December 28 a truck delivering raw materials entered the plant gates. The truck was unloaded and then reloaded with finished goods. It was effectively prevented from leaving the plant by a group of persons who placed themselves in front of the truck. Ten to fifteen women stood in front of the truck, and next to them were ten to twelve men lying in the road with a group of other men standing around them. On December 29 another attempt to move the truck was made but it was not until the truck was unloaded and driven by police that it was able to leave the plant.

Seventeen of the alleged discriminatees were found by the Board to be participants in the effort to prevent the exit of the truck.

Various attempts were made to end the impasse and begin operation of the plant again. During negotiations the Company stated it would need only about twenty-five employees at the reopening of the plant because the machinery would require cleaning. The Company asserted that it would select those it would return to work and would consider them new employees. The question of misconduct on the part of some strikers was not raised, however.

On February 10, 1954 the Company wrote various employees including Maria Elisa Crespo de Cruz, a participant in the truck blocking activities, asking them to report to work after the scheduled Board election.

On February 22 a group of about twenty-five employees crossed the picket line and entered the plant. They were hired as new employees. The next day the remaining strikers held a meeting and decided to end the strike. A letter was drawn offering to return to work on February 24, the only condition being "that in accordance with the law no discrimination be committed against any of the persons who participated in the past strike activity." This letter was delivered to the Company on February 24.

In the period that followed, the Company hired new employees and some former employees who had been employed sometime prior to the strike. The Company did not hire any of the employees named in the complaint, who had abandoned the strike only after the union meeting of February 23. Most of these persons made individual applications for employment within a few weeks. None was rehired. Several were persons whose regular duties prior to the strike included the cleaning of the machinery or the plant. Maria Elisa Crespo de Cruz, who had been invited back before February 22, was not rehired. The Company did not raise a question of misconduct with any of the alleged discriminatees when they made application for employment.

From these basic findings the Board concluded that the Company interfered with, restrained and coerced its employees in violation of Section 8(a) (1) by (1) its notice prohibiting them from distributing union organizing material in the plant and plant grounds on their own time and from carrying the material beyond the plant gate; (2) its letter of November 24, 1953 prohibiting clerical employees, watchmen and loom fixer learners from engaging in union activities; (3) Foreman Rodriguez Rivera's threat of discharge or close of the plant. The Board further concluded that the Company violated Section 8(a) (3) and (1) on December 1, 1953 by discharging Edelmiro Rodriguez Sastre and six other employees for wearing or insisting on the right to wear a union button at the plant.[2] The Board concluded that the

---

2. The Trial Examiner stated that the discharge on December 1, 1953 of the six

discriminatees: Juan Laureano Maldonado, Celedonio Molina Perez, Porfirio

strike was caused by the Company's unfair labor practices, and that the Company violated Section 8(a) (3) and (1) of the Act by considering the strikers new employees and by refusing employment on February 24, 1954 to the twenty-nine persons named in the complaint because they engaged in concerted activity which was protected under Section 7.

The Trial Examiner recommended that thirteen strikers who had participated in blocking the truck's exit on December 28–29 and who had been refused positions at the end of the strike should not be reinstated or given back pay and that the three persons discharged on December 1, 1953 who had so participated and subsequently refused positions be given back payment only from December 1 to December 28, 1953. The Trial Examiner considered the December 28–29 conduct of such a nature as to warrant a denial of the usual reinstatement remedy.

The Board, however, found that the conduct of the truck blocking strikers was objectionable, but not so extreme as to render them unfit for further service, particularly in view of the fact that refusal to reemploy these persons was based on their refusal to abandon the strike earlier. The Board ordered that these persons be reinstated as well as the others and that they be given back pay from the date of the discrimination against them.

The Company's principal contentions are: (1) the order for reinstatement and back pay in regard to Rodriguez Sastre is both unjust and contrary to law because there was no intent by the Company to interfere with an employee's protected right to organize; (2) the finding of discriminatory discharge of the twelve employees on December 1 is outside the charges and complaint and is insufficiently supported by the record; (3) the strike was unprotected activity under the Act because it was in protest of the discharge of supervisors and sought to compel their reinstatement; (4) the refusal to reinstate the thirty-six persons on February 24, 1954 was proper because of the violence with which the strike was conducted.

█ This first contention of the Company is based on the fact that prior to the discharge of Rodriguez Sastre, the Union and the Company had stipulated that loom fixer learners be excluded from the representation unit.[3] The Company contends that this fact destroys the intent required by the Act for violation of Section 8(a) (3) and (1). We believe, however, that the circumstances revealed in the record show clearly that the Company intended to restrain the loom fixers and learners from organizing activities. The discharge of Rodriguez Sastre was in furtherance of this intent. We believe that intent to so restrain its employees' activities is sufficient to establish a violation of the Act if the person intended to be restrained is within the protection of the Act and that there need not be a further intent to violate the Act. See National Labor Relations Board v. Industrial Cotton Mills, 4 Cir., 1953, 208 F.2d 87, 45 A.L.R.2d 880, certiorari denied, 1954, 347 U.S. 935, 74 S.Ct. 630, 98 L. Ed. 1086. The right of employees to engage in activity guaranteed by Section 7 of the Act should not be subject to defeasance merely because the employer believes he is not violating the Act in re-

Agosto Rosado, Guadalupe Adorno de Agosto, Ignacio Negron Arroyo, and Mariana Molina de Rivera, was fully litigated at the hearing, although the complaint alleged that the six employees were discriminated against on or about February 24, 1954.

3. The Board's opinion and its brief before us state that it cannot be shown that the reason for excluding the learners was because they were regarded as super-

visors. The reason for excluding the loom fixers and learners was not explicitly stated at the hearing about the appropriate unit. The context of the statements by both counsel, however, indicate sufficiently to us that the basis for exclusion of the loom fixers, at least, was their alleged supervisory function. Our rejection of the Board's conclusion on this point does not absolve the Company, however.

straining the employee in his exercise of such rights. Furthermore, since the Company was aware of the work and function of the loom fixer learners we do not think that it can rely on any estoppel because of the stipulation's exclusion of learners.

The Company contends that because the loom fixers were found by the Board to be supervisors, the strike objective of their reinstatement makes the strike unprotected activity and the Company may discharge participants without violating the Act. We believe that this contention oversimplifies the matter. The criteria for determining if a person is a supervisor under the Act are various and a determination that a person fulfills one of them does not necessarily mean that concerted employee activity on his behalf is a violation of Section 8(b) (1) (B), 29 U.S.C.A. § 158(b) (1) (B) (1952). If, because the person's supervisory functions do not include collective bargaining or adjusting grievances, employee activity for his reinstatement would not violate the Act, the question of whether the employee action is protected or not must be considered generally. See National Labor Relations Board v. Peter C. K. Swiss Choc. Co., 2 Cir., 1942, 130 F.2d 503 for a holding that the direct beneficiaries of a protected strike need not themselves be protected under the Act.

■■ An employer may be free to discharge an employee for any reason except to encourage or discourage union membership, but the employees are also free to use concerted activities to seek reinstatement of the employee. National Labor Relations Board v. Globe Wireless, 9 Cir., 1951, 193 F.2d 748. See also National Labor Relations Board v. McCatron, 9 Cir., 1954, 216 F.2d 212, 215, certiorari denied, 1955, 348 U.S. 943, 75 S.Ct. 365, 99 L.Ed. 738. If no unfair labor practice has been committed by the employer, a strike seeking reinstatement may be only an economic strike but it is nevertheless protected activity. Cusano v. National Labor Relations Board, 3 Cir., 1951, 190 F.2d 898, 902. The mutual protection of job security is certainly recognizable in this situation.

In the situations involving a strike or other activity protesting the discharge of supervisors, there are cases which either hold or state that such activity is not protected concerted activity under the Act. See, e. g., National Labor Relations Board v. Ford Radio & Mica Corp., 2 Cir., 1958, 258 F.2d 457; National Labor Relations Board v. Coal Creek Coal Co., 10 Cir., 1953, 204 F.2d 579; National Labor Relations Board v. Wallick, 3 Cir., 1952, 198 F.2d 477; Joanna Cotton Mills Co. v. National Labor Relations Board, 4 Cir., 1949, 176 F.2d 749; National Labor Relations Board v. Reynolds Internat. Pen Co., 7 Cir., 1947, 162 F.2d 680. However, in a recent case the Third Circuit has enforced a Board order reinstating strikers who had been discharged for striking in protest of the discharge of a foreman and a rank and file employee. Summit Mining Corp. v. National Labor Relations Board, 3 Cir., 1958, 260 F.2d 894. Also involved in Summit Mining Corp. is the fact that both the rank and file employee and the supervisor were applicants for membership in the union.

In an earlier case, National Labor Relations Board v. Solo Cup Company, 8 Cir., 1956, 237 F.2d 521, the court enforced an order of the Board which, *inter alia,* required the employer to make whole four employees who had been suspended for shutting down their machines in order to seek an explanation for the discharge of a rank and file employee and a supervisor and argue against these discharges. The court upheld the Board's determination that the shut down under the circumstances was protected concerted activity noting that the circumstances indicated "the employees' concern as to the discharge and their fear as to what might happen to them under similar circumstances." Id. at page 526.

In the instant case the loom fixers were active in the organization of the union movement and the strikers could well fear that their own jobs were endangered. This seems reinforced by the fact that the Company made the dismissal of the other rank and file employees as part of the same incident as that af-

fecting the loom fixers and loom fixer learners. Also reinforcing the reasonableness of believing some activity must be taken for mutual aid and protection is the Company's assertion that clerks, watchmen and learners were not within the Act's protection. We believe that the instant case is within the authority of the Summit Mining and Solo Cup cases on this basis.

Perhaps the Summit Mining and the Solo Cup cases may be viewed alternatively as involving a decision by the Board that where one of the strike objectives is the reinstatement of supervisors, the strike activity is not removed from the Act's protection if it also seeks the reinstatement of discharged rank and file employees. Under this view also we believe that the instant case would be governed by the Summit Mining and Solo Cup cases.

■ In summary, we believe that this strike action seeking reinstatement, *inter alia*, of the two loom fixers is not unprotected concerted activity unless the strike action is specifically prohibited by the Act. If the loom fixers are not representatives for the adjustment of grievances or collective bargaining, the Act does not prohibit union efforts on their behalf.

The Trial Examiner noted in regard to the discharge involving Rodriguez Sastre that the complaint did not make any allegations as to the two loom fixers also discharged because they were found by the Board to be supervisors. Nevertheless, the involvement of the two loom fixers in the December 1 discharge and the fact that the subsequent strike sought their reinstatement raises a problem that we believe the Board should have considered. Section 8(b) (1) (B) makes it an unfair labor practice for a union to "restrain or coerce * * * an employer in the selection of his representatives for the purposes of collective bargaining or the adjustment of grievances."

■ If the loom fixers functioned in the grievance procedure of the plant, then the objective of their reinstatement would make the strike an unfair labor practice and unprotected activity. See International Typographical Union Local 38 v. N. L. R. B., 1 Cir., 1960, 278 F.2d 6, reversed in part on other grounds 1961, 365 U.S. 705, 81 S.Ct. 855, 6 L.Ed.2d 36. Discharge by the Company for participation in such a strike would not be a violation of the Act, nor would refusal to reemploy those who participated in such a strike. The lack of protection for such a strike would not necessarily mean that the Board could not order the reinstatement of the strikers, National Labor Relations Board v. Thayer Co., 1 Cir., 213 F.2d 748, 754, certiorari denied, 1954, 348 U.S. 883, 75 S.Ct. 123, 99 L.Ed. 694; National Labor Relations Board v. Wallick, 3 Cir., 1952, 198 F.2d 477, 484. However, the basis of its decision that the policies of the Act would be effectuated by such reinstatement would involve different considerations and we shall remand for further proceedings by the Board.

■ The Company further contends that since the charges and amended complaint do not make any allegation that there was a discharge on December 1, 1953 of employees other than Rodriguez Sastre, the finding of such a discharge and actions ordered to remedy it are illegal and must be denied enforcement. The discharge of the twelve employees was presented by the General Counsel as being a further act of the Company in regard to the union buttons. The issue of such a discharge was fully litigated at the hearing, and properly so, since the question of the objective and cause of the strike was before the Board for determination as part of its case on the rights of the strikers allegedly discriminated against.[4] The Company does not allege or show that it was prejudiced in presenting a defense on this point. See

---

4. The Company in its answer denied "that any or all of its employees struck or went on strike because of any unfair labor practices on part of Respondent" and "that it [the Company] has been guilty of any unfair labor practices."

Fort Wayne Corrugated Paper Co. v. National Labor Relations Board, 7 Cir., 1940, 111 F.2d 869; National Labor Relations Board v. Grieder Mach. T. & D. Co., 6 Cir., 142 F.2d 163, certiorari denied, 1944, 323 U.S. 724, 65 S.Ct. 56, 89 L.Ed. 582. The Board or the hearing examiner could have amended the complaint to include such a charge. See National Labor Relations Board v. Dinion Coil Co., 2 Cir., 1952, 201 F.2d 484, 491.

Under all the circumstances we do not think that the inclusion in the order of a remedy for this unfair labor practice was erroneous.

■ The Company's contention that the refusal to reinstate the thirty-six employees was fully justified because of the violence with which the strike was conducted is without merit since there is substantial evidence to support the Board's finding that such refusal was not based on any misconduct but was to further discourage union membership. Under these circumstances, we will not disturb the Board's choice of reinstatement as a remedy. Of course, if the strike sought the objective of restraining the Company in the selection of its representatives for the adjustment of grievances the strike would be unprotected and the Company's refusal would not be a further violation of the Act.[5]

The Board's order insofar as it orders (1) the ceasing of violations of Section 8(a) (1) and (3); (2) the rescinding of the October 28, 1953 union literature distribution notice; and (3) the reinstatement of Edelmiro Rodriguez Sastre, Juan Laureano Maldonado, Celedonio Molina Perez, Porfirio Agosto Rosado, Guadalupe Adorno de Agosto, Ignacio Negron Arroyo and Mariana Molina de Rivera is based on findings which are supported by substantial evidence in the record considered as a whole and is not erroneous in law. This part of the Board's order will be enforced.

A decree will be entered enforcing the order of the Board to the extent indicated in this opinion and remanding the case for further proceedings not inconsistent with this opinion in regard to the other portions of the Board's order.

ALDRICH, Circuit Judge (concurring).

The two loom fixers were concededly supervisors, and were active leaders in the unionization movement. The respondent requested them to be neutral, and discharged them when they refused. This was not a case where supervisors were discharged for failure to take active steps to prevent unionization. Cf. N.L. R.B. v. Talladega Cotton Factory, Inc., 5 Cir., 1954, 213 F.2d 209, 40 A.L.R.2d 404. The respondent had an absolute right to insist upon their neutrality, and I cannot accept that part of the opinion which states that a strike for their reinstatement could be found to be for mutual protection of job security. N.L.R.B. v. Southern Airways, 5 Cir., 290 F.2d 519. It could not even be thought to be. The employees had no more right to be ignorant of the law than the respondent could be with respect to the loom fixer learner, where the shoe was on the other foot.

However, the respondent on the same day discharged a dozen other employees for failure to be neutral; in their case a demand it had no right to make. I accept the alternative part of the opinion citing Summit Mining that if the strike was largely protected it is within the competence of the Board to find that it did not lose that characteristic because some other object was unprotected, provided that other object was not actually illegal. See, in general, Cox, The Right to Engage in Concerted Activities, 26 Ind.L.J. 319 (1951).

5. The Board's selection of reinstatement as the remedy for the discharges of Juan Laureano Maldonado, Ignacio Negron Arroyo and Edelmiro Rodriguez Sastre would, however, still be appropriate since the refusal to reemploy was not based on the misconduct of these dischargees. See National Labor Relations Board v. Wallick, supra at page 484 of 198 F.2d; National Labor Relations Board v. Anchor Rome Mills, 5 Cir., 1956, 228 F.2d 775.