PUERTO RICO LABOR RELATIONS BOARD, Petitioner, *v.* BANK-
ER'S CLUB OF PUERTO RICO, INC., Respondent.

No. JRT-66-9.　　　Decided June 1, 1967.

574

*J. B. Fernández Badillo, Solicitor General, J. F. Rodríguez Rivera, Acting Solicitor General, Luis M. Rivera Pérez, Celia Canales González,* and *Marta Ramírez Vera* for petitioner. *Goldman, Antonetti & Subirá* for respondent.

First Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Blanco Lugo, Mr. Justice Rigau, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Petitioner Board requests this Court to enforce by decree its order directed against respondent to the effect, in synthesis, to offer to reinstate Rafael Rodríguez and Domingo Ruiz to their positions, or to place them in positions substantially equivalent thereto, to pay them the net loss of

income suffered by them as a result of their discharge, plus legal interest, and to post certain notices.

Respondent is charged with violations of § 8, subsection 1, paragraphs (a) and (c) of the Puerto Rico Labor Relations Act (29 L.P.R.A. § 69(1)(a) and (c))[1] consisting in discharging the aforesaid individuals for their union activities and in discouraging membership of its employees in Local 610 and at the same time encouraging membership in the Union of Employees of the Banker's Club.

Respondent contends that the decree requested should not be issued because (1) sufficient evidence was not presented to support the allegations of the complaint, (2) respondent's actions are protected by the First Amendment of the Constitution of the United States and by the Constitution of the Commonwealth of Puerto Rico as a valid exercise of its freedom of speech and (3) the discharge of the employees concerned was due to reasons not related to their union activity.

For the following reasons the contentions in question are untenable.

---

[1] Subsections (1)(a) and (1)(c) of § 8 of the aforesaid Act provide that:

"(1) It shall be an unfair labor practice for an employer acting individually or in concert with others:

"(a) To interfere with, restrain or exercise coercion upon, or to attempt to interfere with, restrain or exercise coercion upon his employees in the exercise of the rights guaranteed in section 65 of this title.

"(b) . . . . . . . .

"(c) To encourage, discourage or attempt to encourage or discourage membership in any labor organization by discrimination in regard to hiring, firing, or in connection with the tenure or other terms or conditions of employment, including a lockout; Provided, That nothing herein contained prohibits an employer from making an all-union shop contract or a maintenance of membership agreement with any labor organization that has not been established, maintained or assisted by any action defined in this subchapter as an unfair labor practice, if such labor organization represents a majority of the employees in an appropriate unit with authority for collective bargaining."

■ The findings of fact contained in the report of the Trial Examiner, adopted by the Board, are supported by the evidence and therefore they are conclusive, § 9, subsection 2(a) of the Puerto Rico Labor Relations Act (29 L.P.R.A. § 70(2)(a)). We have verified it from the record. *Labor Relations Board* v. *New System Exterminating, Inc.* (Judgment of June 19, 1963).

1. Violation of § 8(1)(c) of the Puerto Rico Labor Relations Act.

■ The Puerto Rico Labor Relations Act does not compel employers to employ anyone, or to retain an incompetent employee, nor does it interfere with the right to discharge any employee for any cause deemed proper by the employer except for union activity or for advocacy of collective bargaining. *Luce & Co.* v. *Labor Relations Board*, 71 P.R.R. 335 (1950); *Associated Press* v. *Labor Board*, 301 U.S. 103 (1937). The burden of proof falls upon the attorneys of the Board. They must prove affirmatively by substantial evidence and not by inferences drawn from other inferences that the discharges in a certain case were due to union activities. *Indiana Metal Products Corp.* v. *National Labor Rel. Bd.*, 202 F.2d 613 (7th Cir. 1953).

■■ As respondent indicates, the evidence to establish a violation of the aforesaid § 8(1)(c) of the Puerto Rico Labor Relations Act must show that (1) the employer had knowledge or knew that the discharged employee was engaged in some activity protected by the act, the activity of the two employees in this case consisting in taking steps so that their coworkers would quit the union existing in the employer's establishment and join another; (2) that such employees were discharged because of their participation in union activities; and (3) that the discharge had the effect of encouraging or discouraging membership in a labor organization, a fact which constitutes an inference, practically

automatic because of the existence of the other two preceding circumstances, until there is a reasonable basis in the evidence for making such findings, the employer need not excuse or justify his action. *Labor Relations Board* v. *Morales*, 89 P.R.R. 760 (1964); *National Labor Relations Bd.* v. *Whitin Machine Works*, 204 F.2d 883 (1st Cir. 1953). In *National Labor Rel. Bd.* v. *Wagner Iron Works, Etc.*, 220 F.2d 126 (7th Cir. 1955), the court held that it was not established that the discharge of 22 night shift employees was discriminatory in order to discourage their activity on behalf of the union and, further, the evidence did not sustain that the company knew of the union membership or leanings of said employees. There appeared only that they were discharged during a representation campaign and that the foreman had told a witness that the night work would not be resumed at full force because he did not want the union activity to be resumed. The finding that a discharge is discriminatory cannot be sustained by speculation drawn from the flimsy evidence that the company knew of their union activity. See also, *National Labor Relations Bd.* v. *National Paper Co.*, 216 F.2d 859, 862 (5th Cir. 1954); *South Tacoma Motor Co.* v. *National Labor Relations Bd.*, 207 F.2d 184 (9th Cir. 1953).

The situation which gives rise to the controversy in this case is described by the Board in its memorandum as follows:

"Around the beginning of the year 1965 the employees used by respondent, Banker's Club of Puerto Rico, Inc., were represented by the Union of Employees of the Banker's Club, for the purposes of collective bargaining. There was a collective bargaining agreement between both parties in force until June 9, 1966.

"Displeased with the exclusive representative said employees decided to replace him. For those purposes they began to carry on a campaign and to procure signatures on behalf of the *Unión de Empleados de la Industria Gastronómica*, Local 610,

AFL-CIO. Two of the most outstanding campaigners were Rafael Rodríguez and Domingo Ruiz.

"The corresponding Petition for Investigation and Certification of Representative was filed before this Board. As a result of said Petition, an election by secret ballot was held among respondent's employees, who elected the *Unión de Empleados de la Industria Gastronómica,* Local 610, AFL-CIO as their exclusive representative. Rafael Rodríguez represented the winning union as observer in the elections.

"On June 9, 1965 a meeting of the employees was held at Rafael Rodríguez' home. Rodríguez and Domingo Ruiz were appointed there delegates of the Union.

"On June 11, 1966 respondent discharged Rafael Rodríguez and Domingo Ruiz for alleged economic reasons.

"On June 14, 1965 the charge in the present case is filed and the complaint is issued on August 12, 1965."

█ The evidence showed that (1) the discharged employees, Rafael Rodríguez and Domingo Ruiz, were engaged in union activities consisting in distributing among the other employees of respondent the membership cards of Local 610; (2) respondent's management favored the existing union to the extent that its executives held meetings on several occasions with the employees to tell them to give an opportunity to the existing union; to support it; "that the management was proud of the union which the company had", that if the workers were not satisfied "with the union we had, we could change the board of directors and we could appoint another chairman and another treasurer and that the union should continue to be that of the house, that we should not go out to find another union, that they knew that all the unions were a bunch of gangsters"; that the new union was not suitable because the employees were not going to obtain as much benefits from it as from the union of the house; (3) that respondent's management offered the employees a wage increase and a possible medical plan if they voted on behalf of such union.

There was proof that respondent's executives (1) on repeated occasions threatened to discharge Rodríguez and Ruiz because they belonged to the outside union as well as all the others "who might be planning to join it"; (2) they knew that those two were the leaders of the movement which incited the elections won by Local 610; (3) they saw Rodríguez at a table in respondent's establishment acting as observer of the new union during the elections held there for the purpose of determining the union which would represent respondent's employees; (4) they had knowledge of a meeting of the winning union at Rafael Rodríguez' home; (5) they discharged Rodríguez and Ruiz two days after said meeting; (6) they said that the discharge was due to economic reasons but they hired two new employees.

Ruiz testified that respondent's manager, after admitting that he was satisfied with the work performed by Rodríguez and by Ruiz and in view of the latters' insistence on knowing the reason for their discharge he informed them "well I discharge both of you because really I have decided to discharge you." Witness, Osvaldo Jambu, organizer of the winning union, testified that he accompanied Mr. Alpes, also from said union, to ask the manager of the Banker's Club why he had discharged Rodríguez and Ruiz and that said manager told them only that "they were not supposed to ask him such things."

The evidence we have just summarized was not rebutted nor controverted by respondent. The latter did not offer any oral evidence. Neither the manager nor any of respondent's supervisors testified at the hearing before the Trial Examiner. Although on cross-examination some witnesses contradicted themselves or testified in a manner conflicting in certain extremes with the testimony of others, this problem of credibility was decided by the Trial Examiner so that, as we said in *Labor Rel. Board* v. *New System Exterminating, Inc., supra,* "Should this Court reach a different

conclusion, even though the situation is somewhat doubtful, it would be tantamount to penetrating in all the details, conflicts and subtleties of the record in order to weigh it differently."

Respondent's contention that it discharged Rodríguez and Ruiz because of their record of absences and tardiness besides the fact of being the least efficient and reliable waiters according to the management's judgment was not justified to the satisfaction of the Trial Examiner and of the Board since evidence was admitted as to the fact that tardiness was a current practice among respondent's employees and respondent tolerated it even in the case of employees with a worse record of tardiness than that of Rodríguez or Ruiz.

We agree with the Trial Examiner and the Board that from the foregoing summary of the evidence it is justified at law to conclude that respondent's management was aware of the fact that Rodríguez and Ruiz were engaged in union activities while they worked in respondent's establishment. Since said management expressed being satisfied with the services of these employees and the excuses of economy and tardiness were not justified, and after all, the manager stated that he discharged them because he had decided to do so, an act consistent with the management's attitude of discharging them for belonging to the union, which attitude was revealed by the management during the preliminary union activity of these two employees in respondent's establishment, it is obvious that the layoff of these employees was caused by their union activity. From the foregoing it is logical to infer that said act had the effect of discouraging union activity in respondent's establishment. *N.L.R.B.* v. *Putnam Tool Company*, 290 F.2d 663 (6th Cir. 1961).

2. Violation of § 8, subsection (1) (a).

■ The Board adopted the following finding of the Trial Examiner: "In referring contemptuously to union organizations, in urging the re-election of the incumbent union,

in offering benefits, threatening with reprisals and inquiring about the union activities of the waiters, the Club interfered with the rights of the employees, thus committing an unfair labor practice within the meaning of subsection 1(a) of § 8 of the Act." This finding is supported by the evidence which we have summarized hereinbefore.

 It is true that expressions of opposition to an outside Union and the indication of preference for another, by themselves, do not constitute acts of coercion or in other way constitute a violation of § 8(1)(a) of the Act. *Labor Board* v. *Virginia Power Co.*, 314 U.S. 469, 477 (1941). But they might constitute such violation when these acts are considered in conjunction with others showing the purpose of the employer of supporting and dominating a union. *National Labor Rel. Bd.* v. *Wagner Iron Works, Etc., supra.* The act of questioning employees about union activities does not constitute a violation of said statute either. *Salinas Valley Broadcasting Corporation* v. *N.L.R.B.*, 334 F.2d 604 (9th Cir. 1964). But this activity violates the statute in question when it is accompanied by threats of reprisals, express or implied, as it appears from the evidence in this case. *National Labor Relations Board* v. *Superior Co.*, 199 F.2d 39 (6th Cir. 1952). See *Revere Copper and Brass, Incorporated* v. *N.L.R.B.*, 324 F.2d 132 (7th Cir. 1963); *National Labor Relations Board* v. *McCatron*, 216 F.2d 212 (9th Cir. 1954).

Therefore, the decision of the Board in this case will be affirmed, its petition will be granted, and its order of July 14, 1966 will be enforced.