JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, peticionaria, *v.* BANKERS CLUB OF PUERTO RICO, INC., demandada.

*Número:* JRT-66-9 *Resuelto:* 1ro. de junio de 1967

---

*J. B. Fernández Badillo, Procurador General, J. F. Rodríguez Rivera, Procurador General Interino, Luis M. Rivera Pérez, Celia Canales de González y Marta Ramírez de Vera,* abogados de la peticionaria; *Goldman, Antonetti & Subirá,* abogados de la demandada.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

La Junta peticionaria solicita que mediante decreto pongamos en vigor su orden dirigida a la demandada al efecto, en síntesis, de que ofrezca reinstalar en su empleo a los señores Rafael Rodríguez y Domingo Ruiz, o a colocarlos en posiciones sustancialmente equivalentes, a abonarles las pérdidas netas de ingreso sufridas por éstos como consecuencia de haberlos despedido de su empleo, más los intereses legales y a colocar determinados avisos.

Se le imputan a la demandada violaciones al Art. 8, inciso 1, párrs. (a) y (c) de la Ley de Relaciones del Trabajo de Puerto Rico (29 L.P.R.A. sec. 69 (1) (a) y (c) ([1]) consistentes

---

([1]) Los incisos (1) (a) y (1) (c) del Art. 8 de la referida ley proveen que:

"(1) Será práctica ilícita de trabajo el que un patrono, actuando individualmente o concertadamente con otros:

"(a) Intervenga, restrinja, ejerza coerción o intente intervenir, restringir o ejercer coerción con sus empleados en el ejercicio de los derechos garantizados por la sec. 65 de este título.

en despedir a los referidos individuos por sus actividades gremiales y en desalentar a sus empleados a pertenecer a la matrícula de la Local 610 a la vez que los alentaba a pertenecer a la matrícula de la Unión de Empleados del Bankers Club.

Apunta la demandada que el decreto solicitado no debe expedirse porque (1) no se presentó prueba suficiente para sostener las alegaciones de la querella, (2) las actuaciones de la demandada se encuentran protegidas por la Primera Enmienda de la Constitución de los Estados Unidos y por la Constitución del Estado Libre Asociado de Puerto Rico como válido ejercicio de su libertad de expresión y (3) el despido de los empleados afectados se debió a razones no relacionadas con la actividad gremial de éstos.

Por las razones que relacionamos a continuación, los apuntamientos en cuestión carecen de fundamento.

█ Las conclusiones de hecho contenidas en el informe del Oficial Examinador, adoptadas por la Junta, están respaldadas por la evidencia y por lo tanto son concluyentes, Art. 9, inciso 2(a) de la Ley de Relaciones del Trabajo de Puerto Rico (29 L.P.R.A. sec. 70(2)(a)). Así lo hemos comprobado del récord. *J.R.T.* v. *New System Exterminating, Inc.*, (Sentencia de 19 de junio de 1963).

1. Violación al Art. 8(1)(c) de la Ley de Relaciones del Trabajo de Puerto Rico.

---

"(b) . . . . . . . .

"(c) Estimule, desaliente o intente estimular o desalentar la matrícula de cualquier organización obrera mediante discriminación al emplear, despedir o en relación con la tenencia de empleo u otros términos o condiciones de empleo, incluyendo un paro patronal; Disponiéndose, que nada de lo aquí contenido prohibe a un patrono hacer un convenio de afiliación total o de mantenimiento de matrícula con cualquier organización obrera no establecida, mantenida o ayudada por acción alguna definida en este subcapítulo como práctica ilícita de trabajo, si dicha organización obrera representa una mayoría de los empleados en una unidad apropiada con facultad para la contratación colectiva."

 La Ley de Relaciones del Trabajo de Puerto Rico no obliga a los patronos a emplear a cualquier o a retener a un empleado incompetente ni interfiere con el derecho de despedir a cualquier empleado por cualquier causa que se considere suficiente por el patrono excepto por razón de actividad gremial o de abogar por la negociación colectiva. *Luce & Co.* v. *Junta Relaciones Trabajo*, 71 D.P.R. 360 (1950); *Associated Press* v. *Labor Board*, 301 U.S. 103 (1937). El peso de la prueba recae sobre los abogados de la Junta. Éstos han de probar afirmativamente, mediante evidencia sustancial y no por medio de inferencias derivadas de otras inferencias, que los despidos en determinado caso fueron causados por actividades gremiales. *Indiana Metal Products Corp.* v. *National Labor Rel. Bd.*, 202 F.2d 613 (7th Cir. 1953).

 Como indica la demandada, la prueba para establecer una violación de la referida Sec. 8(1)(c) de la Ley de Relaciones del Trabajo de Puerto Rico debe mostrar que (1) el patrono tenía conocimiento o sabía que el empleado despedido estaba participando en alguna actividad protegida por la ley, consistiendo la actividad de los dos empleados en este caso de gestiones para que sus compañeros de empleo abandonaran la unión que existía en el establecimiento del patrono y se unieran a otra; (2) que tales empleados fueron despedidos debido a su participación en actividades gremiales; y (3) que el despido tuvo el efecto de alentar o desalentar el unirse a una organización obrera, circunstancia ésta que constituye una inferencia prácticamente automática con motivo de la existencia de las anteriores dos, hasta que haya una base razonable en la prueba para así concluir, el patrono no tiene que excusar o justificar su actuación. *J.R.T.* v. *Morales*, 89 D.P.R. 777 (1964); *National Labor Relations Bd.* v. *Whitin Machine Works*, 204 F.2d 883 (1st Cir. 1953). En *National Labor Rel. Bd.* v. *Wagner Iron Works, Etc.*, 220 F.2d 126 (7th

Cir. 1955), concluyó el tribunal que no se probó que el despido de 22 empleados en un turno nocturno era discriminatorio para desalentar la actividad de la Unión de estos empleados y, además, la prueba no sostuvo que la compañía conocía de la matriculación en la unión o de la tendencia favorable hacia ella de dichos empleados. Sólo aparecía que se despidieron durante una campaña de representación y que el capataz le había dicho a un testigo que no se reanudaría el trabajo nocturno a plenitud porque él no quería que se reanudara la actividad de la unión. El dictamen de que un despido es discriminatorio no puede sostenerse mediante inferencia derivada de evidencia exigua de que la compañía conocía de su actividad unional. Véanse, además, *National Labor Relations Bd. v. National Paper Co.*, 216 F.2d 859, 862 (5th Cir. 1954); *South Tacoma Motor Co.* v. *National Labor Relations Bd.*, 207 F.2d 184 (9th Cir. 1953).

La situación que da margen a la controversia en este caso la describe la Junta en su memorando así:

"A principios del año 1965 los empleados utilizados por la Demandada, Bankers Club of Puerto Rico, Inc., estaban representados por la Unión de Empleados del Bankers Club, a los fines de la negociación colectiva. Existía un convenio colectivo entre ambas partes con vigencia hasta el 9 de junio de 1966.

Disgustados con el representante exclusivo dichos empleados resolvieron cambiar el representante exclusivo. A esos efectos empezaron a hacer campaña y a recoger firmas a favor de la Unión de Empleados de la Industria Gastronómica, Local 610, AFL-CIO. Dos de los que más se distinguieron en dicha campaña fueron Rafael Rodríguez y Domingo Ruiz.

Se radicó la correspondiente Petición para Investigación y Certificación de Representante ante esta Junta. Como resultado de dicha Petición, se celebró una elección por voto secreto entre los empleados de la Demandada, quienes eligieron como su representante exclusivo a la Unión de Empleados de la Industria Gastronómica, Local 610, AFL-CIO. Representaba a la Unión ganadora como observador en las elecciones, el Sr. Rafael Rodríguez.

El 9 de junio de 1965 se celebró una reunión de los empleados en casa de Rafael Rodríguez. Allí se nombraron delegados de la Unión a Rodríguez y a Domingo Ruiz.

El 11 de junio de 1966, la Demandada despide de su empleo a Rafael Rodríguez y a Domingo Ruiz, por alegadas razones económicas.

El 14 de junio de 1965 se radica el cargo en el presente caso y la querella se expide el 12 de agosto de 1965."

█ La prueba demostró que (1) los empleados despedidos, señores Rafael Rodríguez y Domingo Ruiz realizaban actividades gremiales consistentes en distribuir entre los otros empleados de la demandada las tarjetas de afiliación de la Local 610; (2) la gerencia de la demandada favorecía la unión existente al extremo que sus ejecutivos reunieron en repetidas ocasiones a los empleados para decirles que le dieran una oportunidad a la unión existente; que la apoyaran; "que la gerencia estaba orgullosa de la Unión que tenía la casa"; que si los trabajadores no estaban conformes "con la Unión que teníamos que podíamos cambiar la directiva y que podíamos nombrar otro presidente y otro tesorero y que la Unión siguiera siendo de la casa, que no tuviéramos que ir a tomar otra Unión, que él sabía que todas las uniones eran una partida de gangsters"; que la nueva unión no convenía porque los empleados no iban a sacar tanto con ella como con la unión de la casa; (3) que la gerencia de la demandada les ofreció a los empleados aumento de sueldo y posible plan médico si votaban a favor de tal unión.

Hubo prueba de que ejecutivos de la demandada (1) en repetidas ocasiones amenazaron con despedir a Rodríguez y a Ruiz por pertenecer a la unión de afuera así como a todos "los que tuvieran idea de la misma"; (2) sabían que esos dos eran los líderes del movimiento que provocó elecciones en las que ganó la Local 610; (3) vieron a Rodríguez actuar en una mesa en el establecimiento de la demandada como observador de la nueva unión durante las elecciones que se

celebraron allí con el fin de determinar el gremio que habría de representar a los empleados de la demandada; (4) tuvieron conocimiento de una reunión de la unión ganadora en casa de Rafael Rodríguez; (5) dejaron cesante a Rodríguez y a Ruiz a los dos días de dicha reunión; (6) dijeron que la cesantía era debido a economías pero contrataron dos empleados nuevos.

Testificó Ruiz que el gerente de la demandada, luego de admitir que estaba satisfecho con el trabajo de Rodríguez y el de Ruiz y al insistir ellos en conocer la razón de su cesantía les informó "bueno los echo a ambos a dos porque verdaderamente he decidido echarlos." El testigo Osvaldo Jambu, organizador de la unión ganadora, testificó que acompañó al Sr. Alpes, también de dicha unión, a demandar del gerente del Banker's Club la razón que tuvo para dejar cesantes a Rodríguez y a Ruiz y que dicho gerente sólo les dijo que no tenían "porque ir allí a demandar esas cosas con él."

La prueba que acabamos de resumir no fue rebatida ni contradicha por la demandada. Ésta no ofreció prueba testimonial alguna. Ni el gerente ni ninguno de los supervisores de la demandada declararon en la vista ante el Oficial Examinador. Aunque durante el contrainterrogatorio algunos testigos se contradijeron o testificaron en forma en ciertos extremos conflictiva con el testimonio de otros, este problema de credibilidad lo resolvió el Oficial Examinador de manera que, como dijimos en *J.R.T.* v. *New System Exterminating, Inc.*, supra, "Llegar este Tribunal a una conclusión distinta, aun cuando la situación sea un tanto dudosa, equivaldría a penetrar en todos los detalles, conflictos y sutilezas del récord para hacer una apreciación distinta."

La contención de la demandada de que despidió a Rodríguez y a Ruiz debido a sus récords de tardanzas y ausencias en su trabajo además de ser los mozos menos eficientes y cumplidores a juicio de la gerencia, no se justificó a satisfacción del Oficial Examinador y de la Junta ya que se admitió

prueba de que las tardanzas en llegar al trabajo era práctica corriente entre los empleados de la demandada y ésta la toleraba aun en el caso de empleados con peor récord de tardanza que Rodríguez y Ruiz.

Convenimos con el Oficial Examinador y la Junta en que del anterior resumen de la prueba se justifica en derecho concluir que la gerencia de la demandada tenía conocimiento de que los señores Rodríguez y Ruiz se dedicaban a actividades gremiales mientras trabajaban en el establecimiento de la demandada. Como dicha gerencia manifestó estar satisfecha con los servicios de estos empleados y las excusas de economía y tardanzas no se justificaron y, en final de cuentas, la gerencia manifestó que los despedía porque así lo había decidido, acto consistente con la actitud de la gerencia de despedirlos por pertenecer a la unión, actitud revelada por la gerencia durante la previa actividad gremial de estos dos empleados en el establecimiento de la demandada, resulta obvio que la cesantía de estos empleados fue motivada por su actividad gremial. De lo anterior es lógico deducir que dicho acto tuvo el efecto de desalentar el movimiento unional en el establecimiento de la demandada. *N.L.R.B.* v. *Putnam Tool Company*, 290 F.2d 663 (6th Cir. 1961).

2. Violación del Art. 8, inciso (1) (a).

■ La Junta adoptó la siguiente conclusión del Oficial Examinador: "Al referirse despectivamente a las organizaciones obreras, abogar por la relección de la unión incumbente, ofrecer beneficios, amenazar con represalias e inquirir sobre las actividades gremiales de los mozos, el Club intervino con los derechos de los empleados, incurriendo así en una práctica ilícita de trabajo en el significado del inciso (1) (a) del art. 8 de la Ley." Esta conclusión está sostenida por la prueba que anteriormente hemos resumido.

■ Es cierto que las expresiones de oposición a una Unión de afuera y la indicación de preferencia por otra, de

por sí, no constituyen actos de coerción o que en otra forma constituyan una violación al Art. 8(1)(a) de la ley. *Labor Board* v. *Virginia Power Co.*, 314 U.S. 469, 477 (1941). Pero pueden constituir tal violación cuando estos actos van unidos a otros demostrativos del propósito del patrono de sostener y dominar una Unión. *National Labor Rel. Bd.* v. *Wagner Iron Works, Etc.*, supra. Tampoco constituye una violación de dicho estatuto el interrogar a empleados sobre actividades gremiales. *Salinas Valley Broadcasting Corporation* v. *N.L.R.B.*, 334 F.2d 604 (9th Cir. 1964). Pero esta actividad infringe el estatuto en cuestión cuando es acompañada de amenazas de represalias, directas o implícitas como aparece de la prueba en este caso. *National Labor Relations Board* v. *Superior Co.*, 199 F.2d 39 (6th Cir. 1952). Véanse *Revere Copper and Brass, Incorporated* v. *N.L.R.B.*, 324 F.2d 132 (7th Cir. 1963); *National Labor Relations Board* v. *McCatron*, 216 F.2d 212 (9th Cir. 1954).

*Procede por lo tanto, confirmar el dictamen de la Junta en este caso, declarar con lugar su petición, y poner en vigor su orden de 14 de julio de 1966.*