JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO, peticionaria, *v.* CLUB NÁUTICO DE SAN JUAN, demandado.

*Número:* O-68-127 *Resuelto:* 3 de junio de 1969

388

*Rafael A. Rivera Cruz, Procurador General, Celia Canales de González, Marta Ramírez de Vera y José E. Rodríguez Rosaly,* abogados de la peticionaria; *José A. Suro, Ángel A. García, Juan R. Torruella, Antonio J. Amadeo y José E. Amadeo,* abogados del demandado.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

En vista de lo que exponemos a continuación concluimos que debe ponerse en vigor la orden de la Junta de Relaciones del Trabajo de 3 de abril de 1968 dirigida al recurrente Club Náutico de San Juan en los términos que indicamos más adelante.

La contienda en este caso surge en la forma y manera que relacionamos a continuación.

A base de un cargo radicado por la Unión de Trabajadores de la Industria Gastronómica, en lo sucesivo llamada la Unión, la Junta peticionaria emitió querella imputando al recurrente haber incurrido en prácticas ilícitas de trabajo de acuerdo a lo dispuesto en el Art. 8, Sec. 1, incisos (a) y (c) de la Ley de Relaciones del Trabajo, en lo sucesivo llamada la Ley (29 L.P.R.A. sec. 69(1)(a) y (c)).([1]) Se alegó que tales prácticas consistieron en discriminar y despedir a seis empleados "por sus actividades gremiales en favor de la Unión." Negada las alegaciones de la querella y aducidas las defensas de despido por actos de indisciplina en unos casos y a separaciones (*lay offs*) debido a situaciones adversas en otros, se permitió enmendar la querella al concluirse la presentación de la prueba, con la objeción del recurrente, a fin de imputar a éste la práctica ilícita de trabajo de intervenir con los derechos de sus empleados garantizados por el Art. 4 de la referida Ley. (29 L.P.R.A. sec. 65.)

El Oficial Examinador concluyó que el querellado intervino y restringió a sus empleados en el ejercicio de sus de-

---

([1]) La Sec. 69(1)(a) y (c) de la Ley de Relaciones del Trabajo lee así:

"(1) Será práctica ilícita de trabajo el que un patrono, actuando individualmente o concertadamente con otros:

(a) Intervenga, restrinja, ejerza coerción o intente intervenir, restringir o ejercer coerción con sus empleados en el ejercicio de los derechos garantizados por la sec. 65 de este título.

". . . . . . . .

"(c) Estimule, desaliente o intente estimular o desalentar la matrícula de cualquiera organización obrera mediante discriminación al emplear, despedir o en relación con la tenencia de empleo u otros términos o condiciones de empleo, incluyendo un paro patronal; Disponiéndose, que nada de lo aquí contenido prohibe a un patrono hacer un convenio de afiliación total o de mantenimiento de matrícula con cualquiera organización obrera no establecida, mantenida o ayudada por acción alguna definida en este subcapítulo como práctica ilícita de trabajo, si dicha organización obrera representa una mayoría de los empleados en una unidad apropiada con facultad para la contratación colectiva."

rechos bajo el Art. 4 de la Ley. (²) Y que había despedido en violación de lo dispuesto en el Art. 8(1)(a) de la Ley, a los seis empleados por dedicarse, al amparo de la Ley de Relaciones del Trabajo, a actividades concertadas con el propósito de ayuda y protección mutua.

En su orden de 3 de abril de 1968, la Junta adoptó la conclusión del Oficial Examinador enmendándola para determinar que por los despidos en cuestión, el recurrente violó los incisos (a) y (c) del Art. 8(1) de la Ley. Se ordenó al querellado, sus oficiales, agentes, sucesores y cesionarios cesar y desistir de tales violaciones y se ordenó restituir en su trabajo a los seis empleados y compensarles por la pérdida de ingreso que hubieran sufrido hasta la fecha de sus reempleos.

Examinamos a continuación los nueve apuntamientos del recurrente.

"1. Fue impropio del Oficial Examinador, y de la Junta al aprobar su informe, el referirse bajo lo que dicho Oficial Examinador denomina 'Trasfondo Histórico', a evidencia que no se presentó durante el procedimiento, de cuya evidencia no se avisó o informó a esta parte que iba a tomarse conocimiento judicial y que, por lo tanto, no se ha tenido ocasión de objetar, contradecir, explicar, aclarar o en alguna forma defenderse de ella."

La evidencia a que se refiere este apuntamiento es el récord de un procedimiento de certificación en que el recurrente fue parte, en el cual la actitud del recurrente es calificada por el Oficial Examinador como antigremial. Sostiene que esta práctica es adversamente criticada en la anotación 18 A.L.R.2d 552 y en *United States* v. *Pierce Auto Freight Lines*, 327 U.S. 515 (1946).

---

(²)El Art. 4 de dicha ley dispone lo siguiente:

"Los empleados tienen derecho, entre otros, a organizarse entre sí; a constituir, afiliarse o ayudar a organizaciones obreras; negociar colectivamente a través de representantes por ellos seleccionados; y dedicarse a actividades concertadas con el propósito de negociar colectivamente u otro fin de ayuda o protección mutua."

■ El récord demuestra que los expedientes de los casos a que hizo referencia el Oficial Examinador en su "Trasfondo Histórico" fueron admitidos en evidencia como los Exhibits J 2 y J 3, tomándose conocimiento oficial en el Exhibit J 2 de otros casos a que hizo referencia el Oficial Examinador, con el consentimiento del recurrente en el caso del Exhibit J 2 y sin su objeción en el otro.

Al quedar así enterado de que se tomaría conocimiento de los hechos establecidos en estos casos, se puso al recurrente en posición de presentar prueba que estimare pertinente lo cual no hizo.

■ Contrario a lo que alega el recurrente, *Pierce*, supra, sostiene que "el mero hecho que la autoridad adjudicadora ha considerado algo fuera del expediente no invalida su acción a menos que se demuestre que tal acción ha ocasionado perjuicio sustancial." El recurrente no nos ha indicado si ha sufrido perjuicio alguno por el párrafo objetado del informe del Oficial Examinador en el cual en realidad no descansa el dictamen de dicho Oficial.

■ *Pierce*, supra, fue citado con aprobación en *Paramount Cap Mfg. Co.* v. *National Labor Rel. Bd.*, 260 F.2d 109. La Junta Nacional en este caso de práctica ilícita de trabajo, tomó conocimiento judicial de un procedimiento de certificación en que estaban envueltas las mismas partes. Se resolvió que la Junta podía tomar conocimiento judicial de sus propios récords relacionados con litigios previos, interrelacionados, entre las mismas partes.[3] En *Paramount*, supra, al igual que en el caso de autos, el récord se usó como trasfondo histórico de la actitud hostil del patrono hacia la unión.[4]

---

[3] Véase *Pittsburgh Plate Glass Co.* v. *N.L.R.B.*, 313 U.S. 146, 157–158 (1941).

[4] Lo que algunos tribunales han objetado es que el tribunal administrativo basó su decisión en hechos obtenidos de otros casos pendientes o resueltos por el mismo aunque aparezca que las partes eran las mismas en los procedimientos. Véase, 18 A.L.R.2d 552, 581.

"2. Fue impropio del Oficial Examinador y de la Junta al adoptar su informe el referirse y utilizar en sus Conclusiones de Hecho, el testimonio del Sr. Miguel Angel Ramos, cuando el demandado no tuvo oportunidad de contrainterrogar a dicho testigo por no poder la Junta producirlo para tal fin."

Arguye el recurrente que no tuvo oportunidad de contrainterrogar a ese testigo "por no haber éste podido ser localizado por la Junta."

■ Sostiene la Junta que el testigo Ramos estuvo disponible durante la audiencia, pero la parte demandada se reservó el turno para contrainterrogar para la sesión siguiente; que si no se contrainterrogó al testigo fue porque el demandando nunca se ocupó de hacer una solicitud al efecto. Arguye, además, que tal omisión no resultó perjudicial ya que el testimonio del testigo está sostenido o corroborado por otra prueba en el expediente.

*State* v. *Rouse*, 135 S.E. 641 (S.C. 1926), es un caso parecido al de autos. En este caso se resolvió que habiendo el fiscal solicitado que se pospusiera el contrainterrogatorio de un testigo, si la defensa en ningún momento después reclamó su derecho a contrainterrogarlo ni recordó al juez que el testigo no había sido contrainterrogado, había renunciado a su derecho a contrainterrogarlo por no haber hecho la petición oportunamente. Véanse, *State* v. *Johnson*, 152 S.E.2d 669 (S.C. 1967); Wigmore *On Evidence*, Vol. 5, sec. 1371.

3-7. Los apuntamientos 3 al 7 inclusive se basan en la actuación de permitir una enmienda a la querella luego de haber desfilado la prueba, no obstante la objeción del recurrente, con el propósito de incluir un cargo adicional de práctica ilícita de trabajo.

■ Arguye el recurrente que no recibió aviso previo de la imputación del cargo de haber violado lo dispuesto en el Art. 4 de la Ley hasta que se permitió la enmienda de la querella al finalizar la presentación de la prueba ni tuvo

indicio alguno durante el proceso de que la querella había de ser enmendada para incluir dicho cargo, por lo que tenía derecho a inferir que las imputaciones hechas a él eran las contenidas en la querella original. En apoyo de su tesis cita los casos de *N.L.R.B.* v. *Johnson*, 322 F.2d 216 (6th Cir. 1963); *National Labor Relations Board* v. *Kanmak Mills*, 200 F.2d 542 (3d Cir. 1952); *Northeastern Indiana Building and Const. Tr. Coun.* v. *N.L.R.B.*, 352 F.2d 696 (D.C. Cir. 1965); y *N.L.R.B.* v. *International Hod Carriers', Etc., Union*, 287 F.2d 605 (9th Cir. 1961). No tiene razón.

El récord demuestra que la enmienda se basó en la prueba aportada por el testigo del recurrente Sr. Ruemmele. Luego de admitir la enmienda, el Oficial Examinador brindó al recurrente la oportunidad de explicar el testimonio de su testigo pero el recurrente indicó que creía "que el procedimiento no debe ser de esa manera . . . no estamos interesados en un tipo de enmienda de esa naturaleza."

*Johnson*, supra, es distinguible pues el tribunal sostuvo en ese caso que habiendo el Oficial Examinador asegurado al patrono que la evidencia sobre cuestiones no alegadas en la querella se tomarían en cuenta sólo como trasfondo, no podía la Junta encontrar probada otra violación a la cual no se hacía referencia en las alegaciones, ni fue esa otra violación una cuestión litigada pero que de haberla sido hubiera procedido la enmienda para conformar la querella a la prueba presentada.

En *Kanmak*, supra, se dijo que fue error, bajo circunstancias parecidas al que nos ocupa, negarle al patrono su solicitud de que se reabriera la vista para permitir testimonio adicional sobre el nuevo cargo. En el que nos ocupa precisamente se le brindó al recurrente tal oportunidad y éste la declinó.

*Northeastern*, supra, tampoco sostiene la tesis del recurrente pues es muy similar a *Kanmak*, supra. El de *Inter-*

*national,* supra, presenta una situación completamente distinta al que nos ocupa.

Por el contrario, el Art. 9(1)(a) de la Ley (29 L.P.R.A. sec. 70(1)(a)),[5] sostiene la actuación de la Junta, máxime cuando ésta le ofreció al recurrente la oportunidad de explicar o aclarar el testimonio de su testigo en que se basó el cargo imputado por vía de enmienda a la querella y éste en efecto no la aprovechó.

■ Consistentemente se ha sostenido que el Oficial Examinador y la Junta tienen amplia discreción para permitir enmiendas a la querella para conformarla con la prueba aducida. *N.L.R.B.* v. *William J. Burns International Detective Agency,* 346 F.2d 897, 900 (8th Cir. 1965); *Frito Company Western Division* v. *N.L.R.B.,* 330 F.2d 458, 465 (9th Cir.

---

[5] El Art. 9(1)(a) de la Ley dispone que:

"(1) Podrán someterse a la Junta para su acción en la forma y con el propósito que provee el presente subcapítulo cargos fundados en la existencia de una práctica ilícita de trabajo.

"(a) Siempre que se radique el cargo de que cualquier persona, patrono u organización obrera se ha dedicado o se dedica a cualquier práctica ilícita de trabajo, la Junta, o cualquier agente o agencia designado por la misma con ese fin, tendrá la facultad de investigar tal cargo y hacer que se notifique a dicha persona, patrono, u organización obrera una querella en nombre de la Junta, contentiva de los cargos a ese respecto, y que contenga un aviso de audiencia a celebrarse ante la Junta o ante un miembro de ella, o ante un agente o agencia para ello designado en el sitio especificado en dicho aviso, por lo menos cinco (5) días después de notificada dicha querella. Cualquier querella de esta naturaleza podrá ser enmendada por el miembro de la Junta, agente o agencia que dirija la audiencia o por la Junta a su discreción en cualquier tiempo antes de expedirse una orden basada en la misma. La persona objeto de la querella tendrá el derecho a radicar una contestación a la querella original o a la querella enmendada y comparecer en persona o de otra forma y prestar declaración en el sitio y la hora fijados en el aviso de audiencia. Todas las alegaciones contenidas en cualquier querella así expedida que no sean negadas se considerarán como admitidas y la Junta podrá en tal virtud hacer conclusiones de hecho y de ley respecto a las alegaciones de la querella no negadas. A discreción del miembro de la Junta, agente o agencia que conduzca la audiencia, o de la Junta, podrá permitirse a cualquier otra persona que intervenga y que presente prueba en dicho proceso. Las reglas de evidencia que prevalecen en los tribunales de derecho o equidad no serán obligatorias en ningún proceso de esta índole."

1964); *Consolidated Edison Co. v. Labor Board*, 305 U.S. 197 (1938); *N.L.R.B. v. Puerto Rico Rayon Mills Inc.*, 293 F.2d 941, 948 (1st Cir. 1961); *N.L.R.B. v. Local 691, International Bro. of Team., Etc.*, 270 F.2d 696, 699 (7th Cir. 1959); *National Labor Relations Bd. v. Roure Dupont Mfg.*, 199 F.2d 631, 633 (2d Cir. 1952).

"8. Cometió error la Junta al resolver que el aquí demandado violó el Artículo 8(1)(c) de la Ley de Relaciones del Trabajo de Puerto Rico, a pesar de que hay una determinación de hechos del Oficial Examinador inalterada por la Junta, a los efectos de que los abogados de dicha Junta no probaron en la vista que los despidos efectivamente resultaron en desalentar el que los empleados del patrono se unionaran."

Dijimos en *J.R.T. v. Bankers Club of P.R., Inc.*, 94 D.P.R. 600, 608 (1967), que:

"Es cierto que las expresiones de oposición a una Unión de afuera y la indicación de preferencia por otra, de por sí, no constituyen actos de coerción o que en otra forma constituyan una violación al Art. 8(1)(a) de la ley. *Labor Board v. Virginia Power Co.*, 314 U.S. 469, 477 (1941). Pero pueden constituir tal violación cuando estos actos van unidos a otros demostrativos del propósito del patrono de sostener y de dominar una Unión. *National Labor Rel. Bd. v. Wagner Iron Works*, [220 F.2d 126]. Tampoco constituye una violación de dicho estatuto el interrogar a empleados sobre actividades gremiales. *Salinas Valley Broadcasting Corporation v. NLRB*, 334 F.2d 604 (9th Cir. 1964). Pero esta actividad infringe el estatuto en cuestión cuando es acompañada de amenazas de represalias, directas o implícitas como aparece de la prueba en este caso. *National Labor Relations Board v. Superior Co.*, 199 F.2d 39 (6th Cir. 1952)." Otras citas omitidas.

Véanse, además: *Labor Board v. Brown*, 380 U.S. 278, 286 (1965); *Radio Officers v. Labor Board*, 347 U.S. 17, 51, (1954).([6])

---

([6]) El inciso (a) del Art. 8(1) de nuestra Ley condena no tan solo el estimular o desalentar la matrícula de cualquier organización obrera sino también el intento de estimularla o desalentarla. Por lo tanto cuando

■ En el caso de autos el recurrente utilizó los interrogatorios aun hasta el extremo condenado por la doctrina federal, pues los efectuó con amenazas de represalias directa o implícitas para los favorecedores de la Unión. Concluyó la Junta que la gerencia del recurrente tan pronto se enteró del movimiento sindical inició una serie de actividades dirigidas a coaccionar y a atemorizar a los empleados en el ejercicio de su derecho a organizarse en un sindicato de su propia selección. El gerente se dedicó a interrogar varios empleados, ofreció dinero por la información que requería, amenazó con suspender a quienes llevaran las tarjetas, preguntó cómo votaría a un empleado. Estos interrogatorios, entre otra conducta antigremial del patrono, necesariamente intervinieron o intentaron intervenir, restringir, o ejercer coerción con sus empleados en el ejercicio de los derechos garantizados por la Ley.

En vista de lo expuesto concluimos que la Junta no incidió al concluir que el demandado violó el Art. 8(1) (a) de la Ley de Relaciones del Trabajo de Puerto Rico, 29 L.P.R.A. sec. 69(1) (a), por sus interrogatorios y amenazas a los empleados.

"9. Cometió error la Junta al no limitar el remedio a favor de los empleados despedidos al pago de una suma igual a aquella que ellos normalmente hubieren percibido desde el tiempo que dejaron de trabajar hasta la fecha en que el demandado terminó su operación de la cantina y restaurant, a pesar de que el Oficial Examinador hizo una conclusión de hecho, adoptada por la Junta, que hay un concesionario que desde el 1ro. de diciembre de 1967 opera las facilidades de restaurant y cantina del querellado y que 'desde sus inicios lo típico ha sido la operación del restaurant y cantina por medio de concesionarios.' "

la querella se basa en un intento de alentar o estimular la matrícula de cualquier organización obrera, la prueba debe mostrar que se llevó a cabo tal intento. En ese sentido debe entenderse aclarado lo que dijimos en *Bankers Club,* supra, en el cual no hubo ocasión de expresarse con respecto a la actividad ilegal de intentar alentar o estimular la matrícula de cualquier organización obrera.

Sostiene el recurrente que su obligación de compensar a los obreros despedidos ha debido limitarse hasta el 30 de noviembre de 1967 pues de esta fecha en adelante otra empresa se ha hecho cargo de la operación de sus facilidades de restaurant y cantina siendo la contratación de concesionarios lo típico en cuanto a dicha operación se refiere; que así lo concluyó el Oficial Examinador en su informe.

Es cierto que lo típico era que la operación en·cuestión se llevaba a cabo a través de concesionarios. No es menos cierto que del récord aparece que (1) era costumbre del recurrente el gestionar que aquéllos retuvieran a los empleados del negocio, de ahí que entre los empleados hubiera uno con 17 años de servicio, otro con 10 años, otro con 7 años y otros con 6 años de servicio; (2) que la empresa que asumió la operación a partir del 1ro. de diciembre de 1967 lo hizo con pleno conocimiento del conflicto gremial existente; y que (3) el recurrente continúa operando parte del negocio.

La Ley de Relaciones del Trabajo autoriza a la Junta a requerir al patrono que a su juicio se ha dedicado a una práctica ilícita de trabajo, que cese en y desista de la misma y tome tal acción afirmativa que permita efectuar los propósitos de la ley, incluyendo, pero no limitándose a la reposición de empleados, abonándose o no la paga suspendida. 29 L.P.R.A. sec. 70(1)(b).

De entrada debemos determinar si la empresa cesionaria actual es responsable en algún aspecto por las prácticas ilícitas del recurrente, en particular por la reposición de los empleados despedidos con paga retroactiva. Dicho cesionario no fue incluido en la querella original ni subsiguientemente por vía de enmienda de ésta. Se siguió la práctica establecida de hacer la orden en contra del recurrente extensiva a sus oficiales, agentes, sucesores o cesionarios. Aunque esta práctica es correcta, la orden de la Junta puede hacerse cumplir por un sucesor o cesionario del patrono solo cuando se le transfirió el negocio "como un medio de evadir la orden o

por otras razones." Su responsabilidad depende de sus relaciones y conducta. *Regal Knitwear Co.* v. *Board*, 324 U.S. 9, 14 (1945).

En *United States Pipe & Foundry Co.* v. *N.L.R.B.*, 398 F.2d 544 (5th Cir. 1968), un patrono comprador de un negocio fue requerido para mostrar causa por qué no debía ser responsabilizado por unas prácticas ilícitas del trabajo incurridas por el patrono vendedor contra quien se había expedido orden para reponer ciertos empleados. El tribunal concluyó que el patrono comprador tuvo aviso de los procedimientos por práctica ilícita del patrono antecesor. Luego se procedió en contra de dicho comprador y se celebró una vista de su caso. Determinó el tribunal que como el comprador recibió aviso del procedimiento en su contra, contestó y tuvo oportunidad de ser oído, no se le negó el debido procedimiento de ley. Cuando no hay una relación (*nexus*) suficiente entre el patrono original y el comprador de su negocio mediante una continuación simulada o un estado de *alter ego* o mediante un entendimiento o participación con el fin de evadir la orden original, no puede responsabilizarse al patrono comprador por las prácticas ilícitas del patrono que le vende el negocio. Concluyó el tribunal, en vista de que el comprador del negocio continuó la operación de éste, en la misma forma y con los mismos trabajadores, y el presidente de la empresa vendedora fue designado administrador de fábrica del patrono comprador, la Junta tenía facultad para requerir, bajo las circunstancias del caso, que el patrono comprador reinstalase a los empleados destituidos. No surgió cuestión de paga retroactiva pues el patrono vendedor la pagó hasta la fecha de la venta del negocio. *National Labor Rel. Bd.* v. *Birdsall-Stockdale Motor Company*, 208 F.2d 234 (10th Cir. 1953).

En *National Labor Relations Bd.* v. *New Madrid Mfg. Co.*, 215 F.2d 908 (8th Cir. 1964), se trataba de un patrono que

tenía una sucursal, cuya sucursal cerró después de haberse radicado cargos contra el patrono por prácticas ilícitas cometidas en dicha sucursal. Posteriormente, el patrono vendió el equipo de la sucursal a la persona que administraba la misma, y ésta estableció una nueva planta en otra ciudad del mismo estado con el equipo que compró de su patrono. El cargo original fue enmendado para incluir al nuevo dueño del equipo y éste no contestó la querella ni se opuso a la petición de la Junta para que el tribunal ordenara el cumplimiento de la orden dictada por ella. Solo se opuso el patrono original. El tribunal concluyó que el patrono original solo debía responder por las prácticas ilícitas cometidas hasta la fecha en que cerró la sucursal, si hubo una venta *bona fide* de la planta; y no podía obligársele a reponer empleados en una planta que ya había cerrado o vendido a un tercero sobre el cual no ejercía control; ni obligársele a pagar salarios retroactivos sino hasta la fecha en que cerró o vendió la planta.

En cuanto a la responsabilidad del sucesor se dijo que por el mero hecho de comprar la planta no venía obligado a responder por los actos de su predecesor; que cada situación debe evaluarse racional y razonablemente; que para imponerle responsabilidad remedial por actos del predecesor debe haber el equivalente a una aceptación voluntaria de responsabilidad, como por ejemplo, cuando repite las mismas prácticas ilícitas cometidas por su predecesor.

En *Gibbs Shipyards, Inc.* v. *N.L.R.B.*, 333 F.2d 459 (5th Cir. 1964), Gibbs vendió su planta a G.S.I. Se formó un comité ejecutivo nombrado por G.S.I. para seguir operando la planta hasta tanto la venta quedara consumada. Durante el período entre la venta y su consumación, se cometieron ciertas prácticas ilícitas. La Junta Nacional encontró que G.S.I. era responsable por las prácticas ilícitas cometidas desde que se formó el comité hasta la fecha en que se consumó la venta, bien porque controlaba a Gibbs o bien porque era su sucesor. En su consecuencia la Junta ordenó y sostuvo

que Gibbs era solidariamente responsable por la paga hasta la fecha de la venta. La Junta también ordenó a G.S.I. a cesar y desistir toda práctica ilícita de trabajo cometida y en cualquier otra forma intervenir con los derechos de los empleados bajo la ley.

La Corte de Apelaciones encontró que el control práctico por G.S.I. sobre Gibbs antes de que la venta fuera consumada, era suficiente para que G.S.I. respondiera sin tener que acudir a la teoría del sucesor, pero que la orden era muy amplia pues aunque había suficiente continuidad de interés como para hacer que G.S.I. corrigiera las injusticia particulares cometidas por Gibbs, no había base para imputarle las violaciones anteriores de esta última.

Los factores que se han considerado para responsabilizar a una entidad por las prácticas ilícitas cometidas por otra son variados. Un mero cambio de nombre o aparente control no relevan de responsabilidad. *Southport Co.* v. *N.L.R.B.*, 315 U.S. 100 (1942). Si el sucesor es una instrumentalidad mediante la cual se trata de evadir una orden, o participa en las prácticas ilícitas, también responde. *Regal Knitwear Co.* v. *Board,* supra. Cuando las operaciones de dos corporaciones están integradas y la misma persona controla la política laboral de ambas corporaciones, éstas pueden considerarse como un solo patrono (*joint employers*). *National Labor Relations Board* v. *National Garment Co.,* 166 F.2d 233 (8th Cir. 1948); *National Labor Relations Board* v. *National Shoes,* 208 F.2d 688 (2d Cir. 1953); *N.L.R.B.* v. *Gibraltar Industries, Inc.,* 307 F.2d 428 (4th Cir. 1962). En cambio si hay una venta *bona fide* de la empresa, el sucesor no responde por las prácticas ilícitas de su antecesor. *National Labor Rel. Bd.* v. *Birdsall-Stockdale Motor Co.,* supra; *N.L.R.B.* v. *Lunder Shoe Corp.,* 211 F.2d 284 (1st Cir. 1934).

En *N.L.R.B.* v. *Tempest Shirt Manufacturing Company,* 285 F.2d 1 (5th Cir. 1960), se concluyó que Pascal Corporation era un patrono sucesor de Tempest Shirt Manufacturing

Co., contra la cual se había expedido un decreto requiriéndole que restituyera en su empleo a tres empleados con paga retroactiva. La orden iba dirigida contra Tempest, sus oficiales, agentes, sucesores y cesionarios. Por lo tanto, el tribunal determinó que Pascal Corporation había incurrido en desacato al no cumplir con el referido decreto.

La prueba en este caso demostró que Tempest era poseída por otra corporación cuyas acciones las poseían por partes iguales los señores Pascal y Kauffman. Al surgir desavenencias entre éstos, Pascal obtuvo el control de los recursos de Tempest. Esta distribución ocurrió antes de emitirse el referido decreto dirigido contra Tempest, sus sucesores y cesionarios. Para recibir los recursos de Tempest, Pascal organizó la Pascal Corporation la cual continuó los negocios de Tempest. Esta última no fue disuelta pero carece de bienes físicos o financieros y es poseída por otra corporación. El informe del Oficial Examinador determinó que Pascal había incurrido en prácticas ilícitas de trabajo mientras era presidente de Tempest y este informe se adoptó cinco meses después que Pascal y Kauffman terminaron sus relaciones comerciales. El tribunal determinó que lo crucial al determinar la cuestión de sucesión es la continuidad, si la industria permaneció esencialmente la misma luego de la transferencia del dominio. El tribunal determinó que hubo tal continuidad pues no hubo un cambio sustancial de negocio; se producían los mismos productos usando la misma maquinaria y equipo y los mismos supervisores y empleados; por compra Pascal poseía las mismas cuentas por cobrar, y el dominio y control de la norma a seguir permaneció en los mismos individuos. Por lo tanto, resultaba inmaterial que la transferencia del negocio manufacturero de Tempest a Pascal Corporation fuera una transacción comercial *bona fide* "llevada a cabo entre personas independientes unas de otras y sin intereses comunes (*at arm's length*)."

 Tenemos, pues, que para responsabilizar a un patrono por el incumplimiento de una orden de cesar y desistir de prácticas ilícitas de trabajo imputadas al patrono antecesor, es necesario establecer que el segundo patrono es en efecto un "sucesor" del primero, es decir, que la transacción por virtud de la cual el segundo patrono adviene al negocio es simulada o constituye un entendimiento o participación con el fin de evadir la orden en cuestión o el segundo patrono resulta ser un *alter ego* del primero. Si el segundo patrono adquirió el negocio en forma *bona fide* no puede responsabilizarse, a menos que, como en *Tempest*, supra, la prueba demuestre un estado de continuidad en la operación que justifique concluir que, en efecto, la empresa original esencialmente continuó a cargo de la operación, no obstante la transacción *bona fide*. Además, es requisito del debido proceso de ley el que se cite al alegado sucesor y se le brinde una oportunidad de ser oído y aducir alguna posible defensa y la prueba en apoyo de la misma, excepto cuando la prueba demuestre que las circunstancias del caso son similares a las que prevalecían en *Tempest*, supra.

 En el caso que nos ocupa, no se citó ni se le celebró vista alguna al cesionario, ni aparece prueba alguna de simulación o evasión o de ser éste un *alter ego* o una continuación del recurrente. De ahí que concluyamos que la orden en cuestión no puede hacerse extensiva al cesionario y que la responsabilidad de reposición y de paga retroactiva debe recaer exclusivamente sobre el recurrente ya que la Junta informó que éste continúa operando parte de su negocio(⁷) hasta que tal reposición se efectúe en su totalidad.

-----

(⁷) Esta conclusión parece basarse en que el contrato por virtud del cual el concesionario Los Chavales, Inc., se hicieron cargo de la operación del restaurant del recurrente no incluía el turno nocturno pues el ejecutivo del recurrente Lic. José A. Suro, testificó que más tarde dicho concesionario iba a comenzar a operar el referido turno nocturno.

*Se dictará sentencia poniendo en vigor la orden de la Junta Núm. D 490 de 3 de abril de 1968, modificada en el extremo previamente indicado.*