# 2000 DTA 176

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE SAN JUAN**
**PANEL I**

MABEL RODRIGUEZ PACHECO
Recurrida

v.

AUTOMOTORES DE PUERTO RICO, INC. Y OTROS
Recurrentes

Núm. KLRA-2000-00310

San Juan, Puerto Rico, a 15 de agosto de 2000

Panel integrado por su Presidenta, Jueza Fiol Matta,
la Jueza Rodríguez Oronoz y el Juez González Román

## TEXTO COMPLETO DE LA SENTENCIA

Automotores de Puerto Rico, Inc. (Automotores) y Ford Motor Credit Co. (F.M.C.C.) solicitan la revisión de una resolución emitida por el Departamento de Asuntos del Consumidor (DACO) el lro. de marzo de 2000 y notificada el siguiente día 3 del mismo mes, mediante la cual se declaró nulo el contrato de compraventa de un automóvil usado. Se expide el auto y se confirma la resolución recurrida.

El 12 de diciembre de 1998, la Sra. Mabel Rodríguez Pacheco (Sra. Rodríguez) suscribió con Automotores un contrato de compraventa mediante el cual adquirió un vehículo usado Ford Explorer XL de 1996, tablilla

CDF-781, por la cantidad de $16,500.00. El negocio incluyó un pronto pago de $3,822.50 y el restante se financió a través de F.M.C.C. a razón de 60 pagos mensuales de $347.50 al 13%.

Surge del récord que antes de efectuar la compraventa, la Sra. Rodríguez le preguntó específicamente al vendedor de Automotores, el Sr. Tito Llanos (Sr. Llanos), si el auto había sufrido algún impacto. Este contestó que el vehículo era reposeído, fue inspeccionado por F.M.C.C. para ser revendido y que estaba en perfectas condiciones.

Aproximadamente un mes y medio después de la compra, en febrero de 1999, la Sra. Rodríguez visitó a Automotores para arreglar una serie de desperfectos que había descubierto en el vehículo. En ese momento, se le informó a la Sra. Rodríguez que el vehículo estaba fuera de garantía, pues había sobrepasado el millaje para ello. El vehículo tenía 31,000 millas cuando se compró.

Según la Sra. Rodríguez, al momento de la compraventa, el Sr. Rodríguez le había expresado que el vehículo tendría garantía por tres (3) meses. No obstante, la Sra. Rodríguez firmó un documento firmado por ésta en el cual se señala que la *"garantía no aplica"*.

La Sra. Rodríguez trabaja en el estado de la Florida, por lo que deseaba trasladar el automóvil a esa jurisdicción. F.M.C.C. autorizó dicho traslado. El 20 de agosto de 1999, la Sra. Rodríguez contrató a la Sea Land Star Line L.L.C. (Sea Land) para el transporte del vehículo a la Florida. Esa transacción conllevó un desembolso de $620.00. Posteriormente, la Sra. Rodríguez se enteró que el vehículo no podía transportarse, toda vez que no tenía su placa de número de serie o registro, la cual debe encontrarse en una de las puertas del lado izquierdo. Por estar trabajando en la Florida, la Sra Rodríguez tuvo que otorgar un poder legal para remover el vehículo de la zona portuaria.

El 15 de septiembre de 1999, la Sra. Rodríguez presentó una querella ante el DACO contra Automotores y F.M.C.C alegando vicios del consentimiento en el contrato de compraventa. Según la Sra. Rodríguez, Automotores actuó dolosamente al venderle el vehículo. Automotores y F.M.C.C. no contestaron la querella.

El DACO convocó a las partes a una inspección vehicular que se llevaría cabo el 18 de octubre de 1999. A pesar de habérseles notificado, ni Automotores ni F.M.C.C. comparecieron a la misma. El técnico de DACO, Sr. Marcos Ramírez Vera, concluyó que dos puertas del lado izquierdo fueron reemplazadas y pintadas, que la puerta trasera no abría por dentro, que la pintura era retocada y que el acondicionador de aire no enfriaba.

DACO convocó a las partes a una vista administrativa, la cual se celebró el 3 de noviembre de 1999. La Sra. Rodríguez compareció personalmente, asistida por su abogado. Automotores y F.M.C.C. comparecieron por vía de sus respectivas representaciones legales.

Ni Automotores ni F.M.C.C. pudieron explicar el porqué de cambio de color de las puertas izquierdas. Además trataron de establecer que la placa de número de serie se había caído. Surge del récord que la Sra. Rodríguez, quien ha tenido el control absoluto del vehículo, no ha reemplazado ninguna de sus puertas.

Se estableció que la Sra. Rodríguez había incurrido en los siguientes gastos, los cuales sumaron $925.00: lavado de motor ($8.00); costo de tensor ($87.00); mano de obra para arreglar tensor ($15.00); cambio de *"pads"* y reparación de frenos ($110.00); remolque del vehículo ($50.00); embarque del vehículo a la Florida ($620.00); poder legal notarizado para remover vehículo de zona portuaria ($15.00); copias sobre documentos de embarque, Airborne Express ($20.00).

Tras escuchar la prueba y los argumentos de las partes, el DACO decretó la nulidad del contrato de compraventa ante su convencimiento de que, durante la venta, Automotores guardó silencio sobre aspectos esenciales del vehículo los cuales, de haberse sabido por la Sra. Rodríguez, hubieran conllevado el fin de ese

negocio. Por ende, dicha agencia le ordenó a Automotores y a F.M.C.C., solidariamente, a restituirle a la Sra. Rodríguez los $3,822.50 pagados como pronto, además de todas las mensualidades ($357.59) pagadas por la misma hasta el 3 de marzo de 2000 y los $925.00 por concepto de gastos relacionados al arreglo del vehículo. La Sra. Rodríguez, por su parte, tendría que devolver el vehículo. De no cumplirse con la orden del DACO dentro de veinte (20) días contados desde la notificación de la misma, 3 de marzo de 2000, la deuda de Automotores y de F.M.C.C. devengaría intereses al interés legal prevaleciente. En caso de incumplimiento, Automotores y F.M.C.C. estarían sujetos a una multa administrativa de $10,000.00.

Automotores y F.M.C.C. presentaron una moción de reconsideración ante el DACO el 20 de marzo de 2000. El DACO no tomó determinación alguna sobre la misma. Automotores y F.M.C.C. presentaron, el 2 de mayo de 2000, dentro del término provisto para ello, el recurso de revisión que nos concierne.

En su escrito, Automotores y F.M.C.C. alegan los siguientes errores: 1) que el DACO violó el debido procedimiento de ley al emitir su resolución; 2) que erró al decretar dolo en la contratación; 3) erró al concluir que el vehículo se vendió sin la placa de número de serie; 4) erró al imponer el pago de la partida de $925.00; y 5) erró al imponerle a Automotores responsabilidad por la garantía del vehículo.

Procedamos a analizar dichos señalamientos.

Según los recurrentes, el debido proceso de ley se violó, pues la oficial examinadora, Lcda. Migdalia Rodríguez, presidió la vista del caso, mientras que fue un juez administrativo quien decidió la controversia. Tal planteamiento es patentemente improcedente. La sección 3.3 de la Ley Núm. 170 de 12 de agosto de 1988, Ley de Procedimiento Administrativo Uniforme (LPAU), 3 L.P.R.A. sec. 2153, dispone, en lo pertinente, que:

*"Toda agencia podrá designar oficiales examinadores para presidir los procedimientos de adjudicación que se celebren en ella, los cuales no tendrán que ser necesariamente abogados, particularmente cuando el procedimiento en cuestión es uno informal. El jefe de la agencia podrá delegar la autoridad de adjudicar a uno o más funcionarios o empleados de su agencia. A estos funcionarios o empleados se les designará con el título de jueces administrativos. [...]".*

Automotores y F.M.C.C. alegan, además, que la oficial examinadora no le presentó al adjudicador un informe con determinaciones de hecho y conclusiones de derecho, según ordenado por la sección 3.13 de la LPAU, 3 L.P.R.A. sec. 2163f, y por el Art. 3 de la Ley Núm. 87 de 23 de abril de 1973, Ley Orgánica del DACO, 3 L.P.R.A. sec. 341 (i). No encontramos base para tales alegaciones. Del expediente surge claramente que la oficial preparó un proyecto de resolución con las conclusiones fácticas y jurídicas requeridas. Además, ésta le sometió ese proyecto al Director de Adjudicaciones del DACO, Sr. Fernando Báez, quien, fungiendo como juez administrativo, lo acogió en todas sus partes.

Los recurrentes alegan que DACO erró al concluir que Automotores le vendió el vehículo a la Sra. Rodríguez sin la placa de número de serie y mediando dolo. Debemos recordar que el récord demuestra que ni Automotores ni F.M.C.C. objetaron lo alegado en la querella de la Sra. Rodríguez y tampoco asistieron a la inspección ocular del vehículo. Además, en la vista administrativa presentaron sólo testimonios para controvertir el caso de la Sra. Rodríguez.

A los recurrentes se les puso en posición de presentar las pruebas que estimaren pertinentes, lo cual no hicieron. Véase, *J.R.T. v. Club Náutico de San Juan*, 97 D.P.R. 386 (1969); véase, además, Cf., Regla 10 de las de Evidencia, 34 L.P.R.A. Ap. IV, 10 (G). ■ Toda la evidencia que dio base a las recomendaciones de la oficial examinadora --el testimonio de la Sra. Rodríguez, el evidente reemplazo de las puertas, la falta de placa, etc.--, se admitió de acuerdo a derecho. Por su parte, la conclusión del juez administrativo de rescindir el contrato, basada en esas recomendaciones, no fue irrazonable, ya que, como veremos, se sostiene con la prueba.

Entendemos que inferir el dolo de los recurrentes, ante la totalidad de las circunstancias y la evidencia

admitida y creída, ▮ no fue un acto irrazonable. No obstante, tal determinación era innecesaria. La mera inducción a error causada por la información falsa, negligentemente provista por el vendedor, vició el consentimiento de la contratante. Véanse, e.g., Arts. 1217 y 1218 del Código Civil, 31 L.P.R.A. secs. 3404, 3405; *Serrano Ramírez v. Clínica Perea, Inc.,* 108 D.P.R. 477 (1979); *Girod Lube v. Ortiz Rolón,* 94 D.P.R. 406 (1967). El Art. 1218 del Código, *supra,* aclara que *"[p]ara que el error invalide el consentimiento, deberá recaer sobre la sustancia de la cosa que fuere objeto del contrato, o sobre aquellas condiciones de la misma que principalmente hubiesen dado motivo a celebrarlo."* Así, constituye un error de hecho que produce la anulabilidad de un contrato, aquél que gravita sobre la esencia o cualidades sustanciales de la cosa (error in substancia) que afecta, no a la identidad de la cosa, sino a la materia de que se compone o a determinados atributos o caracteres de la cosa, ajenos a su materia, pero que hayan podido ser estimados como esenciales de ella para los contratantes. *Cooperativa La Sagrada Familia v. Castillo,* 107 D.P.R. 405 (1978). Como ya hemos dicho, el representante, no sólo confirmó el buen estado del auto, sino que dio a entender que el mismo estaba en perfectas condiciones. Cabe añadir que el Art. 27.2 del Reglamento de Garantías de Vehículos de Motor del DACO, Reglamento Núm. 4797 de 30 de septiembre de 1992, dispone que *"todo vendedor de vehículo de motor usado"* está obligado a indicar verbalmente si el mismo ha sido *"impactado y reparado posteriormente"* y así consignarlo en el contrato de compraventa. Por ello, somos de la opinión que el vendedor debió, al menos, conocer el estado físico del auto para aventurarse a expresar que el mismo estaba en perfectas condiciones. Un auto en perfectas condiciones incluye, forzosamente, puertas originales y placas de identificación. Automotores no sólo omitió --voluntaria o negligentemente-- información legalmente requerida por el citado reglamento, sino que la falsedad de la información provista, hecho posteriormente comprobado, vició el consentimiento prestado por la Sra. Rodríguez y como consecuencia, el contrato de compraventa puede ser judicialmente anulado.

Preciso es recordar que las decisiones administrativas son generalmente acreedoras de deferencia judicial y los tribunales deben limitarse a indagar sobre la razonabilidad de las mismas. Véanse, e.g., *Facultad de Ciencias Sociales v. Consejo de Educación Superior,* 133 D.P.R. 521 (1993); *Monllor & Boscio v. Comisión Industrial,* 89 D.P.R. 397, 405 (1963). Por ello, las decisiones administrativas tienen a su favor la presunción de legalidad y corrección. *Murphy Bernabé v. Tribunal Superior* 103 D.P.R. 692, 699 (1975). Esta presunción de regularidad y corrección *"debe ser respetada, mientras la parte que la impugne no produzca suficiente evidencia para derrotarla".* *Henríquez v. Consejo de Educación Superior,* 120 D.P.R. 194, 210 (1987). Véase, además, *Catalytic Ind. Maint. v. F.S.E.,* 121 D.P.R. 98, 101-02 (1988); *M. & B.S., Inc. v. Depto. de Agricultura,* 118 D.P.R. 319, 331 (1987). Automotores y F.M.C.C. no han presentado evidencia que menoscabe esta presunción. Tenemos ante nos, por un lado, el testimonio de la Sra. Rodríguez, así como la prueba por ésta utilizada para sustentar sus argumentos, y por otro lado, las alegaciones de los recurrentes. Es preciso recordar que tan recientemente como en *Ivelisse Blás Toledo v. Hospital Nuestra Señora de la Guadalupe,* ___ D.P.R. ___ (1998), **98 J.T.S. 111,** y en *Irene Flores Santiago v. Alberto Domínguez,* ___ D.P.R ___ (1998), **98 J.T.S. 96,** el Tribunal Supremo reiteró la norma fundamental de que un tribunal apelativo no debe intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que haya hecho un foro en primera instancia, excepto en casos en que éste haya incurrido en prejuicio o error manifiesto. No obra en el expediente prueba de tal prejuicio o error.

En cuanto al penúltimo señalamiento, somos de la opinión que algunos de los gastos incurridos por la Sra. Rodríguez -el lavado del motor, la compra y reparación del tensor y el trabajo en los frenos-, son recobrables, pues constituiría un enriquecimiento injusto que Automotores aceptara ese auto, mejorado, sin restituirle esos dineros a la Sra. Rodríguez. La persona que se ha enriquecido a expensas de otra, debe hacer restitución a ésta si están presentes los siguientes requisitos: (1) existencia de un enriquecimiento; (2) un correlativo empobrecimiento; (3) la conexión entre empobrecimiento y enriquecimiento; (4) falta de causa que justifique el enriquecimiento, y (5) inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa. *Hatton v. Mun. de Ponce,* 134 D.P.R. 1001 (1994); *Freyre v. Blasini,* 68 D.P.R. 211 (1948). Véase, Art. 7 del Código Civil, 31 L.P.R.A. sec. 7. Visto el expediente, resulta evidente que la situación de autos llena los citados requisitos. Además de las partidas ya mencionadas, entendemos que el costo del remolque debe

incluirse dentro de los gastos reembolsables para impedir un enriquecimiento injusto. Un vehículo cuyos frenos y cuyo tensor no funcionan correctamente, debe ser remolcado.

DACO tampoco erró al ordenarle a Automotores y F.M.C.C. el pago de los gastos relacionados al embarque hacia Miami. La prueba estableció que la Sra. Rodríguez trabaja en el estado de la Florida, por lo que no es irrazonable la inferencia de que compró el vehículo para utilizarlo en aquella jurisdicción. La intención frustrada de transbordar el vehículo y sus correlativos gastos, están intrínsecamente ligados a la información falsa provista por los recurrentes y los defectos ocultos del auto, en particular la falta de placa de serie.

En cuanto al último señalamiento de error, basta con mencionar que, como hemos visto, la controversia medular del presente caso no versa sobre la aplicabilidad o inaplicabilidad de una garantía, sino sobre la anulabilidad de un contrato de compraventa por vicios del consentimiento. Por lo tanto, no se cometió el error.

Por todo lo anterior, se expide el auto y se confirma la resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Subsecretaria General.

Gladys E. Ortega Ramírez
Subsecretaria General